UNITED STATES of America,
Plaintiff-Appellee,

v.

Tommie E. MARTIN,
Defendant-Appellant.

No. 77–1480.

United States Court of Appeals,
Tenth Circuit.

Submitted Nov. 22, 1977.

Decided Dec. 21, 1977.

Hubert H. Bryant, U. S. Atty., and Ben F. Baker, Asst. U. S. Atty., Tulsa, Okl., for plaintiff-appellee.

Winn, Sakelaris & Mundell, Tulsa, Okl., for defendant-appellant.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

The single issue raised in this appeal concerns the lawfulness of an inventory search of an automobile. By indictment Tommie E. Martin was charged with knowingly and willfully possessing a Remington Arms Company Winchester Model 870 pump shotgun which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). Prior to trial Martin filed a motion to suppress the use of the shotgun found by the arresting officers in the trunk of his car. It was Martin's position that the search of his automobile was in violation of his Fourth Amendment rights, and that the fruits of this search, namely the shotgun, should be suppressed.

An evidentiary hearing was held in connection with the motion to suppress. At that time the trial court heard testimony from the three police officers who were involved in Martin's arrest. The trial court concluded that the search of Martin's automobile was reasonable and did not violate Martin's Fourth Amendment rights.

Martin thereafter waived his right to trial by jury and, by agreement, the case was tried to the court on the basis of the testimony given at the hearing on the motion to suppress, coupled with certain stipulated facts. The trial judge adjudged Martin guilty of the crime charged, suspended the imposition of sentence and placed him on three years probation. This appeal followed.

The hearing on the motion to suppress established that at about 2:30 a. m. Tulsa police officers responded to a call that there was a suspicious car parked in a residential area in Tulsa, Oklahoma. Residents reported that they had seen two persons leave the car, and then return to the car a few minutes later. The two officers who first arrived found two persons in the front seat of the car, both apparently asleep. The defendant Martin was seated on the passenger's side of the front seat, and one LaDon Roberts was more or less behind the steering wheel. Upon being aroused, both Roberts and Martin exited the car. It developed that Roberts had only been asleep, and he advised the officers that the car belonged to Martin. It is conceded that the car in question was in fact owned by Martin. According to the officers, Martin, however, was not only asleep, but was noticeably drunk, so much so that he almost fell getting out of the car. Martin was thereupon placed under arrest for violation of a Tulsa municipal ordinance prohibiting public drunkenness. The arresting officers decided that Martin was in no condition to drive his vehicle, and that under the circumstances the car should be towed to the police garage.

At about the same time a third Tulsa police officer arrived. He made a quick search of the interior of the car and found a loaded .22 calibre pistol in the console between the two front seats. Roberts, incidentally, was placed under arrest at the scene for carrying a concealed weapon. Shortly thereafter, a further search of the entire vehicle was made. Specifically, the investigating officers made what they described as an inventory search, in accord with standard Tulsa police practices, preparatory to having the car towed to the police garage. The search of the trunk revealed the shotgun which formed the basis for the present prosecution. Under the circumstances thus described, we, like the trial court, conclude that the search of Martin's automobile, and more particularly the search of the trunk, was reasonable and not

in violation of Martin's Fourth Amendment rights.

On appeal Martin's basic position is that this was not truly an inventory search, and that the claim of an inventory search is but a cover for what would otherwise be an unlawful search of his vehicle. With such argument we are not in accord.

Inventory searches of automobiles, which are being impounded under local municipal ordinance, have generally been upheld as being reasonable and not in violation of the Fourth or Fourteenth Amendments. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In our view there is nothing in the record to indicate that the search in the instant case was an inventory search in name only, and actually only a subterfuge to cover an otherwise unlawful search. Martin was placed under lawful arrest at the scene for public drunkenness when it became readily apparent to the police officers that Martin was noticeably intoxicated. In our view, at that point a search of Martin's vehicle would have been lawful as incidental to his arrest. However, since Martin was in no condition to drive his automobile, the arresting officers decided to tow the vehicle to the police garage and impound it. Prior to towing the police officers made an inventory search of the vehicle, and it was this search which disclosed the unregistered shotgun in the trunk of the car. In our view, the instant search is factually similar to the search in *Opperman*, and we believe that the present controversy is governed by that case.

Counsel would escape the rule of *Opperman* by pointing out that the glove compartment in *Opperman* was unlocked, and that the trunk in the instant case had to be opened with a key. This argument overlooks the fact that though the glove compartment in *Opperman* was unlocked, the car itself was locked. *South Dakota v. Opperman*, 428 U.S. 364, 366, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Therefore, in both *Opperman* and the instant case a key had to be used before access could be made to the particular area where the search later complained about was effected. We found no real difference between *Opperman* and the instant case.

Counsel for Martin in this Court attempts to distinguish between the initial search made by the back-up officer who found a pistol in the console between the two front seats, and the search made a few moments later of the entire vehicle, including the trunk, and in which the unregistered shotgun was found. Such distinction is in our view contrived and artificial. This was one continuing transaction which occurred in a matter of a few short minutes. When Martin "fell" out of his car he was promptly put under arrest. An immediate decision was made to impound the vehicle, and an inventory search followed. Martin is in no position to successfully complain about the search made by the back-up officer who found the pistol. That search can be justified on any one of several grounds. That search about which Martin can, and does, complain is the ensuing search of the trunk. That search was a part of an inventory search prior to an impounding of the vehicle, and, under such circumstances the trial court did not err in denying the motion to suppress.

■ One reason for an inventory search in connection with the impounding of a vehicle under local municipal ordinance is to protect the police against subsequent disputes over allegedly lost or stolen property. *United States v. Kelehar*, 470 F.2d 176, 178 (5th Cir. 1972) and *United States v. Mitchell*, 458 F.2d 960, 961 (9th Cir. 1972). Counsel argues that no such need for protection exists under local Oklahoma law, where in a "bailment for the sole benefit of the bailor, the bailee is responsible only for gross negligence." Apparently it is counsel's thought that in the instant case the police are but a gratuitous bailee of Martin's property, and that in such case the police have no duty to meticulously inventory Martin's property, as they would only be liable to Martin if gross negligence were established. This line of reasoning is difficult for us to follow. However, we are confident that disposition of the present case does not turn on the law of bailment.

Judgment affirmed.