**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Todd Kevin TUELLER, Defendant–Appellant.**

No. 02–4015.

United States Court of Appeals, Tenth Circuit.

Jan. 13, 2003.

394

Wayne T. Dance, Asst. U.S. Attorney, Robert C. Lunnen, Leshia M. Lee–Dixon, Salt Lake City, UT, for Plaintiff–Appellee.

Stephen R. McCaughey, McCaughey & Metos, Salt Lake City, UT, for Defendant–Appellant.

Before TACHA, Chief Circuit Judge, LUCERO, and HARTZ, Circuit Judges.

**ORDER AND JUDGMENT***

HARTZ, Circuit Judge.

The United States charged Defendant, Todd Kevin Tueller, with possession of a firearm after a felony conviction, in violation of 21 U.S.C. § 922(g), and with possession of methamphetamine, in violation of 21 U.S.C. § 844. Defendant filed a motion to suppress evidence found in his car, arguing that police officers discovered the evidence through a search that violated his Fourth Amendment rights. Following an evidentiary hearing, the district court denied the motion. Defendant then entered a conditional guilty plea. Defendant now appeals the district court's denial of his motion to suppress. We exercise jurisdiction under 28 U.S.C. § 1291 and remand with instructions for further proceedings.

I. *Background*

This case arises from a search following a traffic stop on February 12, 2000. Officer Troy Leary of the West Jordan, Utah Police Department pulled over Defendant's car for speeding. Using his police radio, Officer Leary checked whether there were any outstanding warrants for Defendant's arrest. Officer Leary learned of two arrest warrants, so he called for another police officer to come to the scene and assist in the arrest of Defendant. Before being taken to jail, Defendant asked several times whether he could have some friends, whom he had already called, pick up his car. Officer Leary informed Defendant that if the friends arrived soon, he would release the car to them instead of having it towed. A different police officer drove Defendant to the county jail while

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Officer Leary waited with Defendant's car. After at least an hour passed without any sign of Defendant's friends, Officer Leary began to arrange for the car to be towed and impounded.

During his testimony at the suppression hearing, Officer Leary described the inventory procedures followed by West Jordan Police Department officers prior to impounding a car. Officers "will make a list of everything that's in the vehicle, an inventory of all property and status of the vehicle." Vol. II at 17. In addition, the department has an unwritten policy of calling a drug detection dog to the scene. Officer Leary explained that "generally if a K–9 officer is available, we will always have him come over and do what we call a sniff of the vehicle while we do any hold-for-owners or state tax impounds." Vol. II at 17.

Officer Leary contacted K–9 officer Ken Eatchel, who came to the scene with a dog certified to detect cocaine, methamphetamine, heroin, and marijuana. The dog performed a sniff of the inside of the car and indicated that he smelled drugs in the gear shift boot area. When the dog finished sniffing the car, Officer Eatchel lifted the gear shift boot and found methamphetamine and a key underneath. The officers used the key to open the locked trunk of the car. Inside the trunk they found a handgun, a scale, methamphetamine, and $2,100 in cash.

At the suppression hearing the Government introduced as evidence the West Jordan Police Department's written inventory and impound policies, which direct officers to search both locked and unlocked trunks during inventory searches. Officer Leary testified that he and Officer Eatchel "weren't able to get into the trunk any other way" besides using the key found under the boot. The key chain holding the ignition key did not contain a trunk key, and the trunk release device in the glove compartment was not working.

Defendant moved to suppress the evidence found in the gear shift boot area and trunk of his car, and the district court conducted a suppression hearing. On July 17, 2001, the district court filed an order denying Defendant's motion. The district court found (1) that Officer Leary could properly inspect the interior of the passenger compartment of the Defendant's car as a search incident to arrest; (2) that for several reasons, including the indication given by the drug-detection dog, the officers had probable cause to believe that the gear shift boot was concealing contraband, and thus the search of the boot area was lawful; (3) that "Officer Leary acted appropriately and followed the department's procedure in beginning an inventory of the vehicle when Tueller's friends did not retrieve the car", Vol. I, Doc. No. 59, at 5, and (4) that the officers would have inevitably discovered the evidence in the Defendant's car trunk, "especially considering that the department policy expressly provided that officers should inventory locked trunks." Vol. I, Doc. No. 59, at 6.

Following the district court's denial of his motion to suppress, Defendant entered a conditional plea to the firearm charge, reserving his right to appeal the district court's ruling on his motion to suppress. Defendant now appeals that ruling. "When reviewing a district court's denial of a motion to suppress, we accept its factual findings unless clearly erroneous and view the evidence in the light most favorable to the government." *United States v. Hargus,* 128 F.3d 1358, 1361 (10th Cir.1997). In contrast, "the ultimate determination of Fourth Amendment reasonableness is a question of law which we review de novo." *United States v. Hill,* 199 F.3d 1143, 1147 (10th Cir.1999).

## II. *Discussion*

On appeal the parties focus on the question whether the officers' search of Defendant's passenger compartment and trunk constituted a proper inventory search. Defendant contends that by using a drug detection dog, the officers exceeded the scope of a valid inventory search. According to Defendant, the use of a dog trained to find illegal substances reflects an investigative, rather than administrative, law enforcement purpose, thereby rendering the inventory procedure unconstitutional. *See Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

The Government responds that we need not reach the issue of the lawfulness of incorporating a drug detection dog into an inventory search, because the evidence challenged by Defendant was admissible under the doctrine of inevitable discovery. The Government asserts that even if, by using the dog, the officers overstepped the permissible boundaries of an inventory search, the officers would have found the evidence through a search of Defendant's car that was properly conducted. At oral argument the Government requested that we concentrate our attention on this inevitable discovery theory.

The Supreme Court adopted "the ultimate or inevitable discovery exception to the exclusionary rule" in *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Under this doctrine, "if evidence seized unlawfully would have been inevitably discovered pursuant to a legal search, the evidence is admissible." *United States v. Haro–Salcedo,* 107 F.3d 769, 773 (10th Cir.1997). Here, the Government maintains that the officers would have found the contraband in the trunk through a standard inventory search. Upon discovering the methamphetamine and firearm in the trunk, the officers would have developed probable cause to conduct a thorough search of the other areas of the car, properly using a drug detection dog. In the scenario outlined by the Government, this extensive search would then have yielded the methamphetamine in the gear shift boot.

The Tenth Circuit has held that the doctrine of inevitable discovery applies in cases where a lawful inventory search follows, or would have followed, the police conduct challenged under the Fourth Amendment. *See, e.g., United States v. Ibarra,* 955 F.2d 1405, 1410 (10th Cir.1992) ("[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.") The success of the Government's inevitable discovery argument therefore hinges on whether the hypothetical procedure described by the Government—a standard search of the trunk—would have constituted a valid inventory search.

The United States Supreme Court has observed that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Inventory searches are subject to two main limitations. First, "inventory searches are reasonable only if conducted according to standardized procedures." *Haro–Salcedo,* 107 F.3d at 772. Second, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. at 4. Rather, "[t]he policy or practice governing inventory searches should be designed to produce an inventory." *Id.*

In this case the hypothetical search of Defendant's trunk would satisfy these conditions. The police department's written guidelines directed officers to inventory both locked and unlocked trunks. In addition, the Tenth Circuit has recognized the

reasonableness of taking the trunk's contents into account when preparing an inventory of an impounded car. We approved an inventory search of a locked trunk in *United States v. Martin,* 566 F.2d 1143 (10th Cir.1977).

Defendant does not seem to dispute the general legitimacy of performing inventory searches of car trunks. Instead, Defendant argues that the officers would not have inevitably discovered the items in the trunk, because the officers gained access to the trunk only after finding the key under the gear shift boot. Defendant maintains that without the key, opening the locked trunk would have required breaking into the car. In Defendant's view forcibly opening a trunk does not represent a reasonable method of performing an inventory search.

In support of this position, Defendant relies on *United States v. Lugo,* 978 F.2d 631 (10th Cir.1992). In *Lugo* the Tenth Circuit evaluated a search in which the officer had bent back a car stereo speaker cover to look inside a door panel. "Although the permissible scope of an inventory search has not been well-defined, searching behind the door panel of a vehicle does not qualify as 'standard police procedure,' and does not serve the purpose of 'protecting the car and its contents' under any normal construction of those terms." *Id.* at 637, *quoting South Dakota v. Opperman,* 428 U.S. 364, 372, 373, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (footnote omitted).

We disagree with Defendant that the necessary implication from the record is that the officers would have had to resort to breaking into the trunk. The record simply does not provide a sufficient basis for discerning how the officers would have carried out a search of Defendant's locked trunk if they had not found the trunk key under the gear shift boot. In this circumstance, the better course is to remand to the district court for further fact-finding on the issue of the methods that the officers would have employed to perform an inventory of the Defendant's locked car trunk in the absence of the owner's trunk key. The district court must resolve any factual disputes concerning how the trunk would have been opened, but the court need not issue new rulings on the lawfulness of the search. The parties may, if they wish, stipulate to any relevant facts.

We REMAND to the district court for further proceedings consistent with these instructions. We retain jurisdiction over this appeal pending the supplementation of the record by the district court.