F I L E D
United States Court of Appeals
Tenth Circuit

NOV 4 2003

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 02-4015

TODD KEVIN TUELLER,

Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:00-CR-132-K)**

Stephen R. McCaughey, Salt Lake City, Utah, for Defendant-Appellant.

Robert C. Lunnen, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the briefs), Salt Lake City, Utah, for Plaintiff-Appellee.

Before **TACHA,** Chief Circuit Judge, **LUCERO** and **HARTZ** , Circuit Judges.

**HARTZ** , Circuit Judge.

Upon being charged with possession of a firearm after a felony

conviction, in violation of 18 U.S.C. § 922(g), and with possession of

methamphetamine, in violation of 21 U.S.C. § 844, Defendant Todd Kevin Tueller

moved to suppress certain evidence that had been found in his car. After the district court denied his motion to suppress, Defendant entered a conditional guilty plea to the firearm charge. Defendant now appeals the district court's suppression ruling.

Defendant challenges two inventory searches—one that was actually conducted and one that is hypothetical. The actual inventory search was conducted by police officers as they prepared to impound Defendant's car after his arrest during a traffic stop. That search, performed with the assistance of a drug-detection dog, yielded incriminating evidence. Defendant contends that use of the dog rendered the search unlawful. In response, the government defends the use of the dog but concentrates its appellate argument on the hypothetical search—asserting that if the officers had not used the dog, the evidence would still have been discovered in the course of a lawful inventory search that would inevitably have been conducted. We address only the hypothetical search. We hold that on the record before us the inevitable inventory search would have been constitutional. Therefore, we need not consider whether the actual search was rendered unlawful by the use of the dog. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment and sentence.

I.    Background

On February 12, 2000, Officer Troy Leary of the West Jordan, Utah, Police Department pulled over Defendant's car for speeding. Defendant was the driver

and sole occupant. During the stop Officer Leary learned that there were outstanding warrants for Defendant's arrest. He called for another police officer to assist in arresting Defendant. Defendant inquired whether some friends of his, whom he had already called, could retrieve his car from the scene. Officer Leary replied that he would allow the friends to pick up the car so long as they arrived soon. Otherwise, he would arrange to have the car towed. Officer Leary remained with the car while another officer drove Defendant to the county jail. When more than an hour passed without any sign of Defendant's friends, Officer Leary prepared for the car to be towed and impounded.

Before impounding a car, West Jordan Police Department officers "make a list of everything that's in the vehicle, an inventory of all property and status of the vehicle." R., Vol. II at 17. In addition, an unwritten departmental policy directs officers to call a drug-detection dog to the scene. According to Officer Leary, "generally if a K-9 officer is available, we will always have him come over and do what we call a sniff of the vehicle while we do any hold-for-owners or state tax impounds." *Id.*

Officer Leary contacted K-9 Officer Ken Eatchel, who brought a dog qualified to detect cocaine, methamphetamine, heroin, and marijuana. While performing a sniff of the interior of Defendant's car, the dog indicated that there were drugs in the gearshift boot area. Officer Eatchel pulled up the boot and

-3-

discovered methamphetamine and a key underneath. Using this key, the officers opened the car's locked trunk, where they found a handgun, a scale, methamphetamine, and $2100 in cash. The officers would have been unable to unlock the trunk without the key, because there was no trunk key on the key chain holding the ignition key, and the trunk release device inside the glove compartment was not working. Nevertheless, the West Jordan Police Department's written inventory and impound policies call for officers to search both locked and unlocked trunks during inventory searches.

Defendant filed a motion to suppress the evidence found in the trunk and gearshift boot area of his car. Following a hearing, the district court denied the motion, ruling that (1) the search of the passenger compartment was a lawful search incident to arrest, (2) the officers' search of the gearshift boot area was supported by probable cause, (3) the search was a lawful inventory search, and (4) the evidence in the trunk was admissible under the doctrine of inevitable discovery, because it would have been discovered in the inventory search even if the dog had not been used.

Defendant pleaded guilty to the firearm charge, conditioned on his right to appeal the district court's suppression ruling. In initially considering Defendant's appeal, we remanded to the district court for additional factual findings regarding "the methods that the officers would have employed to perform an inventory of

-4-

the Defendant's locked car trunk in the absence of the owner's trunk key."

*United States v. Tueller*, 58 Fed. App. 393, 397 (10th Cir. 2003). On remand the

parties stipulated that the "officers['] procedure in this case, if they had not had a

key, would have been to break into the trunk to perform an inventory." District

Ct. Order on Remand at 1.

"When reviewing a district court's denial of a motion to suppress, we

accept its factual findings unless clearly erroneous and view the evidence in the

light most favorable to the government." *United States v. Hargus,* 128 F.3d 1358,

1361 (10th Cir. 1997). In contrast, "the ultimate determination of Fourth

Amendment reasonableness is a question of law which we review de novo."

*United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999).

II.   Discussion

Although the district court relied on a number of grounds in denying

Defendant's motion to suppress, the parties' arguments on appeal center on the

requirements for a proper inventory search. Defendant maintains that the

officers' methods rendered the inventory search of his car unconstitutional. By

using a dog trained to find illegal drugs, Defendant contends, the officers

demonstrated that they were improperly acting with an investigative, rather than

administrative, motive. *See Florida v. Wells*, 495 U.S. 1, 4 (1990). The

government defends the use of a drug-detection dog in an inventory search.

According to the government, incorporating a drug-detection dog into an otherwise valid police procedure does not undermine the lawfulness of the procedure.

In the alternative, the government argues that we need not assess the legality of using the drug-detection dog, because the officers would have inevitably discovered the contraband as the result of a proper inventory search of the trunk. For the following reasons, we agree with this alternative argument.

A.     Inventory Searches

"It is common practice for the police to conduct an inventory of the contents of vehicles they have taken into their custody or are about to impound." Wayne R. LaFave, *Search and Seizure* § 7.4 at 536 (3d ed. 1996 & Supp. 2003). Such inventories "are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). They are not treated as investigative searches because they serve three administrative purposes: "the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (internal citations omitted).

Although inventory searches need not be supported by a warrant or probable cause, they are restricted in other ways. First, they "are reasonable only

if conducted according to standardized procedures." *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997). Second, "[t]he policy or practice governing inventory searches should be designed to produce an inventory," *Wells*, 495 U.S. at 4; in other words, an inventory search must be justified by the administrative purposes of such searches, *see, e.g.*, *United States v. Edwards*, 242 F.3d 928, 938 (10th Cir. 2001) ("To be justified as an inventory search, . . . the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability."). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 U.S. at 4.

B.    Inventory Discovery

The government asserts that the evidence challenged by Defendant would inevitably have been discovered, without the assistance of the drug-detection dog, through a lawful inventory search of the trunk. The United States Supreme Court has recognized "the ultimate or inevitable discovery exception to the exclusionary rule," which applies when "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . ." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Those lawful means include an inventory search. *See, e.g.*, *United States v. Ibarra*, 955 F.2d 1405, 1410 (10th Cir. 1992) ("[I]f evidence seized unlawfully

-7-

would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.").

C.     Application to this Case

The government relies upon a hypothetical inventory search of the trunk during which the officers would have found the methamphetamine, firearm, and other evidence.  The government states that even if the drug-detection dog had not led them to the methamphetamine and trunk key by the gearshift boot, (1) the officers would have searched the trunk, in compliance with the West Jordan Police Department's policy of conducting inventories of locked car trunks; (2) upon finding the contraband inside the trunk, the officers would have had probable cause to perform an extensive search of the entire car, during which they would have used a drug-detection dog; and (3) this dog-assisted search would have resulted in the discovery of the methamphetamine in the gearshift boot.

Defendant's argument against this hypothetical search addresses only the first step described in the scenario—the search of the trunk.  He contends that such a search would not have been part of a valid inventory search.  *See, e.g.*, *Haro-Salcedo*, 107 F.3d at 773 (the doctrine of inevitable discovery applies when "evidence seized unlawfully would have been inevitably discovered pursuant to a *legal* search" (emphasis added)).  We must therefore evaluate the hypothetical trunk search in light of the standards for inventory searches.

Defendant does not dispute that a search of his trunk would have been consistent with a "standardized procedure." The police department's written guidelines directed officers to inventory both locked and unlocked trunks. Nor does Defendant appear to contest the general reasonableness of conducting inventory searches of locked car trunks. In any event, we approved an inventory search of a locked trunk in *United States v. Martin*, 566 F.2d 1143 (10th Cir. 1977).

Instead, Defendant focuses his argument on the methods that the officers would have used to open his locked car trunk. The officers did not have a key to the trunk at the beginning of their inventory. And the trunk release device in the glove compartment apparently was broken. The officers were able to open the trunk only after finding the key under the gearshift boot. At oral argument Defendant contended that without the key, the officers would have had to use force to open the trunk and that this would have been an unreasonable way of performing an inventory search.

When we first considered this appeal, we "remand[ed] to the district court for further fact-finding on the issue of the methods that the officers would have employed to perform an inventory of the Defendant's locked car trunk in the absence of the owner's trunk key." *Tueller*, 58 Fed. App. at 397. On remand the parties stipulated that "the officers['] procedure in this case, if they had not had a

key, would have been to break into the trunk to perform an inventory." District Ct. Order on Remand at 1.

Thus, we consider whether breaking into a locked trunk exceeds the bounds of a proper inventory search. Even inventory searches performed in accordance with standard operating procedures must satisfy the Fourth Amendment's reasonableness requirement. *See Opperman*, 428 U.S. at 376 ("On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not 'unreasonable' under the Fourth Amendment.") Only a few reported opinions have addressed the lawfulness of breaking open a trunk for an inventory search. Although they suggest that such breaking is unlawful, these opinions are readily distinguishable. One stated that breaking would be unconstitutional, *United States v. Lawson*, 487 F.2d 468, 475 (8th Cir. 1973); but it predated *Opperman* and much of the rationale of the decision has been rejected by the Supreme Court. Other cases have somewhat different facts. *See State v. Cabage*, 649 S.W.2d 589, 592 (Tenn. 1983) (breaking into storage trunk on bed of pickup truck was unconstitutional); *Gill v. State*, 625 S.W.2d 307, 319 (Tex. Crim. App. 1981) (removing back seat to get into trunk was unconstitutional), *overruled on other grounds by Osban v. State*, 726 S.W.2d 107 (Tex. Crim. App. 1986). *But cf. United States v. Harvey*, 16 F.3d 109, 111 (6th Cir. 1994)

-10-

(approving an inventory search during which officers removed the back seat in order to inventory the trunk, but not specifically discussing why the methods that the officers used were proper). Two other opinions noted that breaking into a trunk would violate either a local ordinance, *United States v. Bradley*, 219 F. Supp. 2d 1150, 1155 (D. Or. 2002), or a police field manual, *People v. Walker*, 604 N.Y.S.2d 631, 633 (N.Y. App. Div. 1993).

In support of his argument that breaking open the trunk would have been unreasonable, Defendant relies on *United States v. Lugo*, 978 F.2d 631 (10th Cir. 1992), where we considered an inventory search during which an officer bent back a car stereo speaker cover to look inside a door panel. We found the search unlawful, stating that "[a]lthough the permissible scope of an inventory search has not been well-defined, searching behind the door panel of a vehicle does not qualify as 'standard police procedure,' and does not serve the purpose of 'protecting the car and its contents' under any normal construction of those terms . . . ." *Id.* at 637 (quoting *Opperman*, 428 U.S. at 372, 373) (footnote omitted).

*Lugo* is distinguishable, however, because here we have a standard police procedure (of opening locked trunks), and we have previously held that searches of locked car trunks are justified as proper inventory searches. *Martin*, 566 F.2d at 1144-45.) On the other hand, *Martin* itself is distinguishable from this case because the locked trunk was opened with the owner's key. Thus, we have no

binding authority regarding the propriety of breaking open a locked trunk to perform an inventory search in accordance with standard procedures for the law enforcement agency performing the search.

In our view, the fact that the officers break into the trunk does not in itself render the inventory search unconstitutional. We see no reason to distinguish the passenger compartment from the trunk in this regard. And we note that in *Opperman* itself—the leading Supreme Court decision on inventory searches—the officers lacked a key to enter the locked passenger compartment. Indeed, the South Dakota Supreme Court, whose decision was reviewed in *Opperman*, described the entry of Opperman's car in a manner consistent with the stipulated finding in this case that the "officers['] procedure . . . would have been to break into the trunk." District Ct. Order on Remand at 1. The South Dakota court wrote: "The police officer ordered the tow truck operator to *break into the vehicle*, which he succeeded in doing by unlocking the door with a tool." *State v. Opperman*, 228 N.W.2d 152, 153 (S.D. 1975) (emphasis added). Thus, we decline to hold that an inventory search of a motor vehicle cannot include breaking into the trunk.

That is not to say, however, that police officers have free rein to enter the trunk as they wish. "Excessive or unnecessary destruction of property" can render police conduct unreasonable under the Fourth Amendment. *United States v.*

*Ramirez*, 523 U.S. 65, 71 (1998) (but holding that when officers have reasonable suspicion justifying a no-knock entry, a heightened standard of suspicion is not imposed just because the entry requires destruction of property).  Accordingly, we would expect officers opening locked trunks ordinarily to use master keys or similar tools to gain entry.  In this case, absent any evidence that the inventorying officers would have engaged in "[e]xcessive or unnecessary destruction of property," we hold that the inevitable inventory search would have been lawful.

III.     Conclusion

For the above reasons, we conclude that the evidence in Defendant's car would inevitably have been discovered in the course of a lawful inventory search. We AFFIRM the judgment below.