**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

STEVEN RAY WALKER,

    Defendant-Appellant.

No. 03-5048

(N.D. Oklahoma)

(D.C. No. 02-CR-44-EA)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **HENRY**, and **HARTZ**, Circuit Judges.

---

On March 7, 2002, Steven Ray Walker was indicted on one count for possession of a firearm after a former felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Mr. Walker moved to suppress evidence, including the firearm and ammunition that the arresting officers found during a warrantless search of his vehicle. Mr. Walker also moved to suppress statements that he made following the vehicle search. The district court denied the motion. Mr. Walker

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

entered a conditional plea of guilty on November 14, 2002, reserving the right to appeal the ruling on his motion to suppress. Mr. Walker now appeals the denial of the motion. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.[**]

## I. BACKGROUND

The following facts in the record are undisputed. On December 27, 2001, Officer Shellie Wood of the Tulsa Police Department observed Mr. Walker standing in front of his car outside a suspected drug house and/or chop shop. Mr. Walker started to get into his vehicle, then stopped and walked back into the house after seeing Officer Wood. Shortly thereafter, Officer Wood noticed Mr. Walker driving away in his vehicle. Officer Wood followed Mr. Walker for some time and observed him making an unsafe lane change and a sudden entry into a gas station. After stopping him for operating his vehicle in an unsafe manner, Officer Wood arrested Mr. Walker for driving with a suspended license; Mr. Walker does not challenge this arrest.

During the arrest, Officer Wood noticed that Mr. Walker smelled strongly of marijuana. A criminal history check revealed that Mr. Walker had previously

[**]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* FED. R. APP. P. 34(f). The case is therefore ordered submitted without oral argument.

-2-

been convicted of burglary and various weapon- and drug-related offenses. After completing a search of the passenger compartment incident to arrest, Officer Katherine Still, who had arrived on the scene to back up Officer Wood, executed an inventory search of the vehicle to prepare the car for towing. Officer Still discovered aluminum foil, some small plastic baggies, and a round of .223 caliber ammunition in the trunk. Though the baggies and foil were empty, Officer Wood believed based on her "experience of doing drug arrests" that the items were drug paraphernalia. Rec. vol. III, at 85 (Hr'g Tr., dated Oct. 25, 2002). Officer Wood then suggested searching the hood area since she had observed Mr. Walker lingering there earlier in the night.

When she reached the front of the vehicle, Officer Wood noticed a hole in the grill. A third officer on the scene opened the hood for Officer Wood, who discovered a loaded Glock 9mm, semiautomatic pistol under the hood, behind the headlight in the vicinity of the hole. After Officer Wood found the Glock, a canine search of the car was performed.[1] The dog "hit" on Mr. Walker's car "in the back seat, in the trunk, the front of the car, and the two side doors." *Id.* at 23.

## II. DISCUSSION

"When reviewing a district court's denial of a motion to suppress, we

---

[1] It is not clear from the record at what point during the stop the officers requested the dispatch of the canine unit; however, the timing of the request does not affect our finding regarding probable cause, so we need not address it here.

consider the totality of the circumstances and view the evidence in a light most favorable to the government." *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999). We accept the factual findings of the district court unless those findings are clearly erroneous. *Id.* "The ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).

Mr. Walker contends that the search of his trunk and hood area was conducted in violation of his Fourth Amendment rights. He asks us to review: 1) whether the trunk search of his vehicle was appropriate as an inventory search pursuant to impound of a vehicle on private property; 2) whether probable cause justified the search of the trunk and hood area; and 3) whether the evidence found in the trunk and under the hood would have been "inevitably discovered" by the canine search. Aplt's Br. at 1. Mr. Walker's appeal is limited to questions concerning the physical evidence; he does not raise any issues with respect to the statements he made following the search of his vehicle.

A. Inventory Search

Mr. Walker argues that the inventory search of his trunk was invalid because the Tulsa Police Department lacked the authority to impound his car. Police officers are generally authorized to impound parked or abandoned vehicles

if 1) the impoundment is in accordance state or local law, or 2) the impoundment is justified under the public safety exception of *South Dakota v. Opperman*, 428 U.S. 364 (1976).  *See, e.g.*, *United States v. Rios*, 88 F.3d 867, 870 (10th Cir. 1996) (upholding defendant's motion to suppress because "the government failed to show that the impoundment of the vehicle satisfied [state] law or the public safety exception of *South Dakota v. Opperman*.").  The district court held that while the search of Mr. Walker's vehicle, including the trunk, was authorized as an inventory search under these criteria, the search under the hood was not a valid inventory search.  We agree.

"An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment, designed to effect three purposes: protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger." *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997) (internal citations omitted).  An inventory search must be justified by administrative purposes and "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).  Trunk searches are generally treated as valid extensions of inventory searches.  *See United States v. Tueller*, No. 02-4015, 2003 WL 22481817, at *4 (10th Cir. Nov. 4, 2003) (noting "the general reasonableness of conducting inventory searches of locked car trunks");

*United States v. Martin*, 566 F.2d 1143, 1145 (10th Cir. 1977) (holding that the search of a locked trunk was a lawful inventory search).

The Tulsa Police Department (TPD) routinely conducts inventory searches prior to impounding vehicles, in keeping with TPD Procedure 31-112H. *See* Rec. vol. I, doc. 17, Ex. B (Government's Response to Defendant's Motion to Suppress, filed Oct. 16, 2002). TPD Procedure 31-112G provides officers with the authority to impound a vehicle if "the driver was arrested and the vehicle is left unattended in a location that would constitute a traffic hazard or is highly susceptible to damage or vandalism. This includes private property open to the public when the offense the vehicle was initially stopped for occurred on a public way." Rec. vol. I, doc. 17, Ex. A, ¶ 1.b. When Mr. Walker was arrested, his car was in the parking lot of a gas station. The TPD determined that the car needed to be towed "[b]ecause it was blocking the pumps of the business and there was really not a safe place to put it." Rec. vol. III, at 16.

It is well-established that the police are authorized to impound vehicles "[i]n the interests of public safety and as part of what the Court has called 'community caretaking functions.'" *Opperman*, 428 U.S. at 368 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)); *see also United States v. Johnson*, 734 F.2d 503, 505 (10th Cir. 1984) (noting officers' "appropriate exercise of the 'community caretaking functions'" when defendant's automobile was legally

parked in a residential neighborhood, citing the inability of the defendant to drive and "concern[s] about vandalism"). As Mr. Walker was alone at the time of his arrest, there was no one immediately available to move his car to a safe location. *See* Rec. vol. I, doc. 17, Ex. A, TPD Procedure 31-112G, ¶ 2.b (noting that officers *may* allow the owner/operator of a vehicle to "[s]ummon a person of the owner/operator's choice to come to the scene, in a timely manner, to take custody of the vehicle"); *United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994) ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory."). Because he was arrested for driving with a suspended license, it is clear that Mr. Walker was in no position to drive the car home. Additionally, the vehicle was located in area where it could have inhibited business or been subject to theft or vandalism.

With these facts in mind, it is reasonable to conclude that the TPD was permissibly carrying out its "community caretaking functions" by impounding Mr. Walker's car. We therefore reject Mr. Walker's argument regarding the validity of the trunk search. We agree with the district court's finding that the search under the hood was not a valid inventory search because "[t]he United States has not shown that Officers Wood and Still were searching the engine compartment for personal property of Walker that needed to be accounted for, or that the

officers were searching the vehicle to ensure their own safety."  Rec. vol. I, doc.

21, at 6 (Dist. Ct. Order, filed Oct. 29, 2002).

B. Probable Cause

A warrantless search of a vehicle is valid if it is based on probable cause.

*See Carroll v. United States*, 267 U.S. 132, 149 (1925).  "Probable cause to search

a vehicle is established if, under the *totality of the circumstances* there is a fair

probability that the car contains contraband or evidence."  *United States v.*

*Nielsen*, 9 F.3d 1487, 1489-90 (10th Cir. 1993) (internal quotation marks

omitted).

The district court determined that the TPD had probable cause to search

Mr. Walker's vehicle, including the hood area, based on the observations and

knowledge of Officer Wood.  The factors contributing to this finding included:

> Officer Wood's knowledge of the criminal activities, including drug
> activities, that had been associated with the house outside of which
> Walker was observed by Officer Wood; Walker's suspicious behavior
> in standing and lingering in front of his vehicle before entering the
> vehicle; Walker's hesitation to enter his vehicle once he noticed Officer
> Wood's presence; Walker's quick and sudden departure from the house
> location; Walker's sudden and unsafe lane change; Walker's decision
> to abruptly pull into a gas station shortly after Officer Wood observed
> him getting gas at another station; the smell of marijuana that was on
> Walker and in the interior of his vehicle; the damaged grill with a hole
> in the side; and the criminal history and background of Walker.

 Rec. vol. I, doc. 21, at 7.

Mr. Walker argues that there is no evidence to support the district court's

finding that the smell of marijuana was detected in his vehicle. He contends that, at most, the smell of marijuana was detectable on his person and that "there was no nexus to the car." Aplt's Br. at 16. Contrary to the finding of the district court, Officer Wood's testimony suggests that the smell of marijuana was limited to Mr. Walker's person. *See* Rec. vol. III, at 14-15 ("Once I got him out and I was close to him, I could smell an odor of what I thought was marijuana *on his person.*") (emphasis added); *id.* at 24 ("I smelled marijuana *on him*, but I didn't find any in the car itself.") (emphasis added). However, as discussed below, the totality of the circumstances support a finding of probable cause regardless of the extent of the smell, so any error regarding whether the car smelled of marijuana is harmless.

We emphasize that our finding of probable cause is based on the existence of many factors, including the presence of ammunition and drug paraphernalia in the trunk, evidence of a hole or compartment in the grill, Officer's Wood knowledge of Mr. Walker's criminal history, the fact that Officer Wood observed Mr. Walker lingering near the hood of his car earlier in the evening, Officer Wood's training and knowledge concerning the practice of hiding contraband under the hoods of cars, and Mr. Walker's evasive behavior.

It is true that evasiveness or nervousness, the smell of marijuana, or knowledge of a past conviction does not necessarily support a finding of probable

cause in the absence of other evidence. *See, e.g.*, *United States v. Wald*, 216 F.3d 1222, 1227 (10th Cir. 2000) (noting that we have "repeatedly recognized" that evidence of nervousness around law enforcement officers "is of limited significance"); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995) ("If an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment," but not the entire vehicle.); *Nielsen*, 9 F.3d at 1491 (holding that the "smell of burnt marijuana," combined with "[d]efendant's nervousness and a fifteen year old misdemeanor drug conviction" did not give officers probable cause to search the trunk of a vehicle). Certain additional factors in this case, however, lead us to conclude that the totality of the circumstances do support a finding of probable cause.

Significantly, the officers conducted the search of the hood area after finding a round of ammunition and suspected "drug paraphernalia," i.e., aluminum foil and small plastic baggies, in the trunk of the car pursuant to a valid inventory search. S*ee Michigan v. Thomas*, 458 U.S. 259, 261-62 (1982) (suggesting that discovery of contraband during a valid inventory search can give police officers probable cause to search the rest of the car). Moreover, Officer Wood noticed a suspicious hole in the grill of Mr. Walker's car, which, combined with her knowledge of the practice of hiding contraband under the hoods of cars and her observation of Mr. Walker lingering near the hood earlier that night, led

-10-

her to believe that Mr. Walker might be concealing contraband in the hole. *See United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997) ("Evidence of a hidden compartment can contribute to a finding of probable cause to search.").

Keeping in mind the ammunition and other materials found in the trunk, the hole in the grill, the fact that Mr. Walker was observed lingering near the hood of his car, Officer Wood's knowledge of Mr. Walker's criminal history, and the other factors relied upon by the district court, we hold that the totality of the circumstances in this case established probable cause to search under the hood of Mr. Walker's vehicle.

C. Inevitable Discovery

The district court held that even if the search of the trunk and/or hood area was illegal, the evidence is admissible under the doctrine of inevitable discovery because probable cause would have been established after the drug dog hit on Mr. Walker's car. Because we have already found that the search was based on probable cause, we need not address this issue.

Accordingly, the district court's denial of Mr. Walker's motion to suppress is AFFIRMED.

Entered for the Court,


Robert H. Henry
Circuit Judge

-11-