FILED
United States Court of Appeals
Tenth Circuit

September 5, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JOSHUA METTS,

     Defendant - Appellant.

No. 17-2111
(D.C. No. 1:15-CR-01502-WJ-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

Joshua Metts was arrested on October 2, 2014, upon suspicion of robbery and aggravated assault with a deadly weapon. During his arrest, police discovered a handgun in his car. Upon being charged as a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Mr. Metts moved to suppress evidence of the gun, arguing that the police discovered the gun through an unconstitutional inventory search in violation of the 4th Amendment. After hearing the matter, the district court denied Metts's suppression motion, concluding that police would have "inevitably discovered" the handgun either in plain view or upon a full inventory search of Metts's vehicle through impoundment as evidence of a crime. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.

Albuquerque Police Department (APD) officers dispatched to the scene of an alleged robbery at a Dollar General store in Albuquerque, New Mexico on September 12, 2014. On that day, Mr. Metts's girlfriend, S.C., entered the Dollar General and asked for a refund on a phone card. The cashier refused to refund the purchase and S.C. left the store, returning with Mr. Metts. He demanded a full refund from the cashier who again refused to do so. An angry Mr. Metts bumped the cashier aside with his arm, retrieved several packs of cigarettes, and left the store without paying for the cigarettes. The security guard on duty, along with the cashier, followed Mr. Metts outside to the parking lot where he and S.C. entered a 1991 blue Cadillac El Dorado. From inside the car, Mr. Metts pulled out a handgun and pointed it at the security guard, warning him not to call police. Mr. Metts and S.C. then drove off in the El Dorado.

While viewing the surveillance video of the crime, police officers recognized Mr. Metts and S.C. from prior encounters. Based on an affidavit prepared and submitted by Detective Perea, an arrest warrant for robbery and aggravated assault with a deadly weapon was issued for Mr. Metts.

Twenty-days later, on October 2, 2014, detectives located a 1991 blue Cadillac El Dorado registered to Mr. Metts and conducted a felony stop in the empty parking lot of a partially abandoned strip mall. After boxing in his car with their police vehicles, the detectives ordered Mr. Metts out of the driver's side window of the vehicle. Once he exited the vehicle through the window, detectives handcuffed and placed him under arrest away from the vehicle. The driver's side window was left rolled down.

The detectives then secured the vehicle—checking it for persons and other threats such as guns and explosive drugs—and called Perea to tell him they found a gun in Mr. Metts's car. When Perea arrived on the scene, he looked through the open driver's side door and saw the gun located between the driver's side door and the driver's seat. He then ordered the vehicle sealed and towed to the crime lab for processing in accordance with APD Procedural Orders governing the impoundment of motor vehicles. Perea, the only witness at the suppression hearing, testified to the fact that he neither witnessed Metts's arrest nor the securing of the vehicle.

As relevant here, Mr. Metts was indicted on April 23, 2015, for interference with interstate commerce occurring on September 12, 2014, and for being a felon in possession of a firearm occurring on October 2, 2014. He filed a motion to suppress evidence of the firearm.

At the outset, the district court found that the impoundment of Mr. Metts's vehicle was proper under a specific policy of the Albuquerque police for towing vehicles "for evidentiary purposes related to armed robberies." ROA vol. 1 at 127. In doing so, the court determined that the police towed Mr. Metts's car pursuant to this specific evidentiary policy rather than under a more general policy of towing vehicles in all instances of arrest. Because it had been used as the getaway car in the Dollar General robbery during which Mr. Metts pointed a gun out the window and threatened the witnesses, the car "clearly had evidential value, and indeed, the firearm allegedly used in the commission of the armed robbery was found in [it]." *Id.* at 128.

3

Noting that Detective Perea could not testify as to how the gun was found because he arrived on the scene after the arresting officers discovered it, the court concluded that regardless of whether the gun was found through an allegedly unwritten and unconstitutional search policy covering all arrestees, the detectives would have inevitably discovered it through either finding the gun in plain view when they opened the door to remove the keys from the ignition and to roll up the window[1] before leaving the car parked where it was, or through an inventory search at the crime lab under the standard operating procedure governing towing and impoundment of vehicles for evidentiary purposes. Applying the inevitable discovery doctrine, the court denied Mr. Mett's motion to suppress.

## II.

"When reviewing a district court's denial of a motion to suppress, we accept its factual findings unless clearly erroneous and view the evidence in the light most favorable to the government." *United States v. Tueller*, 349 F.3d 1239, 1242 (10th Cir. 2003) (quoting *United States v. Hargus*, 128 F.3d 1358, 1361 (10th Cir.1997)). "In contrast, 'the ultimate determination of Fourth Amendment reasonableness is a question of law which we review de novo.'" *Id.* (quoting *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999). We may also "affirm the district court 'on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by

---

[1] While the district court found that the keys were still in the ignition at the time of arrest, our review of the record does not support that finding. Instead we rely on the court's alternative finding that the windows were rolled down in Metts's vehicle.

the district court.'" *United States v. Edwards*, 632 F.3d 633, 641 (10th Cir. 2001) (quoting *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994)).

At the very heart of a suppression motion is the fundamental right to freedom from unreasonable search and seizure by the government. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Evidence seized in violation of the Fourth Amendment is precluded under the exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643, 648 (1961). This rule excludes evidence obtained through the original "'illegal search or seizure,'" as well as "'evidence later discovered and found to be derivative of an illegality,' the so-called "'fruit of the poisonous tree.'" *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016) (quoting *Segura v. United States,* 468 U.S. 796, 804 (1984)).

In determining whether a violation has occurred, the "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citing *Flippo v. West Virginia*, 528 U.S. 11, 13 (1999) (*per curiam*)). True to the measurement of reasonableness, "[t]his exclusionary rule does not apply when the costs of exclusion outweigh its deterrent benefits." *Strief*, 136 S.Ct. at 2059. "Suppression of evidence . . . has always been our last resort, not our first impulse." *Id.* at 2061 (quoting *Hudson v. Michigan,* 547 U.S. 586, 591(2006)).

When considering the "reasonableness" of a warrantless search under the Fourth Amendment, a difference exists between houses and cars. Motor vehicles are "a category of 'effects,'" giving rise to "a reduced expectation of privacy." *Thornton*

5

*v. United States*, 541 U.S. 615, 631 (2004) (citing *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999)).  Although the privacy interest of a motorist in his vehicle is a constitutionally protected right, it is "less substantial than in his home." *Arizona v. Gant*, 556 U.S. 332, 345 (2009).

Even if reasonable suspicion did not exist enabling a lawful search of Mr. Mett's vehicle incident to arrest, the gun would still have been inevitably discovered in plain view during the officers' community caretaking duties.  If the officers did not have reasonable suspicion for a search incident to arrest, then the search was undoubtedly illegal because it was done for investigatory rather than administrative reasons.  *United States v. Edwards*, 632 F.3d 633, 644 (10th Cir. 2001) ("To be justified as an inventory search, however, the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability.").  But the officers would have inevitably discovered the gun when they reached in to roll up the window to secure the car while it was in police custody.

The inevitable discovery doctrine "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Strieff*, 136 S.Ct. at 2061 (citing *Nix v. Williams*, 467 U.S. 431, 443–44 (1984)).  "Although a search may violate the Fourth Amendment, the exclusionary rule is inapplicable if the evidence inevitably would have been discovered by lawful means." *United States v. Souza*, 223 F.3d 1197, 1202 (10th Cir. 2000).  The burden of proof is on the

6

prosecution to prove by "a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix*, 467 U.S. at 444. In addition, no requirement exists that the "independent investigation inevitably . . . [leading] to discovery of the evidence . . . was ongoing at the time of the illegal police conduct." *Souza*, 223 F.3d at 1203 (quoting *United States v. Larsen*, 127 F.3d 984, 986 (10th Cir. 1997)). In fact, the independent investigation may be "hypothetical" only in nature. *United States v. Tueller*, 349 F.3d 1239, 1244 (10th Cir. 2003). In the context of a vehicle search, the inevitable discovery doctrine provides that "if evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible." *United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998).

Here, the district court found two separate department policies that would have inevitably led to the discovery of the firearm. First, the court noted that the keys were left in the ignition with the front window down, and that it was a standard department procedure to remove the keys from the ignition of a stopped vehicle. Thus, once the officers opened the door to remove the keys, they would have seen the gun in plain view. Second, the court found that under the ADP's policy of impoundment for evidentiary purposes related to armed robbery, the gun would have been discovered during an inventory search at the crime lab. Mr. Metts argues that the court erred in finding that the keys were left in the ignition because there was no testimony at the suppression hearing to substantiate such a finding. He also argues that an impoundment for evidentiary purposes, unlike a standard impoundment where

7

an inventory is taken to safeguard the possessions of the vehicle's owner, requires probable cause and that there was no probable cause in this case.

We need not address Mr. Metts's challenge to the constitutionality of the inventory search or his challenge to the district court's finding of fact because the Supreme Court has spoken on this exact issue. In *Harris v. United States*, 390 U.S. 234, 235 (1968), the defendant's vehicle was seized at the time of his arrest for robbery. A department regulation required the office in charge of the impounded vehicle to search it thoroughly, remove all the valuables, and attach an inventory tag on it. *Id*. In this particular case, the window was left rolled down and the doors unlocked. *Id.* The Court recounted the officer's actions as follows:

> The officer entered on the driver's side, searched the car, and tied a property tag on the steering wheel. Stepping out of the car, he rolled up an open window on one of the back doors. Proceeding to the front door on the passenger side, the officer opened the door in order to secure the window and door. He then saw the registration card, which lay face up on the metal stripping over which the door closes.

*Id*. at 235-36. The Court reasoned that "[t]he admissibility of evidence found as a result of a search under the police regulation [was] not presented" in that case. *Id*. at 236. The Court viewed the actions of the police as simply "a measure taken to protect the car while it was in police custody." *Id*. The Court concluded that once the officers had entered the car legally through their role as community caretaker, the registration card could be seen in plain view and thus subject to seizure. *Id*.

8

Similarly, in this case, had the officers not performed an investigatory search on Mr. Metts's vehicle, they would have, at the very least, opened the door to roll up the window. "Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances." *Id*. And when the officers opened the door, the gun, wedged between the driver's door and seat, would have come into plain view and been discovered by the arresting officers. Evidence discovered in plain view must pass a three-prong test in order to be admissible under the doctrine: (1) the officer is lawfully in position to view the object in plain view; (2) the incriminating nature of the object must be immediately apparent (illegal weapon possessed by felon *United States v. Gordon*, 741 F.3d 64, 71-72 (10th Cir. 2014)); and (3) the officer had a lawful right of access to the object. *United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994). Here, the officers would have lawfully been in a position to view the item and would have had a lawful right of access to the object because they would have lawfully entered the car pursuant to their role as community caretakers. In addition, the incriminating nature of the gun would have been readily apparent because the officers knew Mr. Metts was just arrested for robbery and assault with a deadly weapon. Accordingly, the exclusionary rule does not apply and the district

9

court properly denied Mr. Metts's motion to suppress the evidence.

We AFFIRM.

Entered for the Court


Stephanie K. Seymour
Circuit Judge