UNITED STATES of America, Plaintiff–Appellee,

v.

James Garry HORN, Defendant–Appellant.

No. 91–4136.

United States Court of Appeals, Tenth Circuit.

July 21, 1992.

Cheryl I. Jolley, Salt Lake City, Utah, for defendant-appellant.

David J. Jordan, U.S. Atty., and Mark K. Vincent, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before LOGAN, BARRETT, and EBEL, Circuit Judges.

LOGAN, Circuit Judge.

Defendant James Garry Horn entered a plea of guilty to violation of 18 U.S.C. §§ 922(g) and 924(a)(2), possession of a firearm by a felon, conditioned on appeal of the district court's denial of his motion to suppress evidence of his possession of a handgun and a rifle.[1] Defendant argues for suppression on several grounds: (1) the initial stop of defendant's car was improper; (2) the trooper's investigation and defendant's detention were not reasonably related in scope to the initial stop under the circumstances; (3) defendant's consent to search the vehicle was not voluntary, and in any event exceeded the scope of any consent given; (4) the roadside search of defendant's car was constitutionally invalid; and (5) defendant's *Miranda* warnings were insufficient.

## I

Defendant was stopped by a state highway patrolman (the trooper) while traveling west-bound on Interstate Highway 80 in Utah, close to the Nevada border. He was driving a car without a front license plate, which is required in Utah and Nevada but not in Oklahoma, the state issuing the license plate for defendant's car. All three states issue license plates with light colored backgrounds. The trooper stopped defendant because the trooper noticed the absence of the front license plate and noticed that defendant did not appear to be wearing a seatbelt.[2]

When defendant stopped the car beside the highway, he steered it such that it came to rest not parallel to the highway, but at an angle heading back toward the highway. The trooper felt constrained to approach the rear of defendant's car from the passenger side of the patrol car be-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Under Utah statute, enforcement of the seat belt requirement may only be secondary to detention of a driver for other offenses. *See* Utah Code Ann. § 41–6–184.

cause this unusual parking position made the trooper concerned about his safety. Defendant nervously craned his neck and twisted in his seat to keep the trooper in sight as the trooper approached defendant's car. After examining the rear license plate, the trooper approached defendant, seated in the driver's seat of the car, and asked for defendant's driver's license and car registration. Defendant produced his driver's license, but instead of a car registration, he turned over what he described as a bill of sale for the car, which was handwritten on the back of an envelope without a notary seal. After the trooper asked for further proof of ownership, defendant produced the title to the car, which was not signed over to defendant. The trooper requested that defendant stand in front of the car while the trooper checked the vehicle identification number (VIN). After checking the VIN number but before running a computer check on defendant's driver's license and ownership documents, the trooper asked defendant if he had any drugs, guns, or large amounts of cash in the car. Defendant replied that he did not. Still holding defendant's driver's license and title documents to the car, the trooper asked defendant again whether he had any weapons in the car. Defendant replied that he did not and told the trooper he could search the car if he wanted to.

Although the trooper told defendant that the trooper did not have a search warrant and that defendant did not have to consent to having the trooper search the car, defendant reiterated, "Feel free to look if you want to," II R. at 30, and turned to the car to retrieve a backpack laying on the car's seat. Defendant asserts that he consented solely to a search of the backpack. The trooper, however, suggested that they begin by looking in the trunk of the car. Defendant got his keys from the ignition and walked to the rear of the car with the trooper. He attempted to hand the keys to the trooper, who refused them, asking defendant to open the trunk. Defendant did so. Among the contents of the trunk was an antique fifty caliber Hawkins black pow-

der rifle in a case and a box of 30/30 cartridges.

While defendant returned to the driver's seat of the car, the trooper returned to the patrol car and called in for a National Crime Computer Information Center (NCIC) check on the defendant's driver's license and vehicle. He was informed that there was a warrant for defendant's arrest for parole violation and that he should use caution because defendant was considered dangerous. The trooper requested backup and arrested defendant at gun-point. After the backup officer arrived, defendant was detained, hand-cuffed and held at gun-point, while the trooper searched the interior and the trunk of defendant's car. It was during this search that the trooper discovered a loaded .38 caliber handgun under the driver's seat and a Winchester 30/30 rifle in the trunk. The trooper referred to this search as an "inventory search" of the car. The backup officer completed the inventory report for defendant's car later in the day; the trooper did not fill out or sign the inventory report.

Defendant was transported some miles to the highway patrol station in the trooper's car. As the trooper began driving, he read defendant his *Miranda* rights from a card. Subsequently, during the drive, defendant discussed with the trooper his ownership of the weapons that were in the car.

## II

We review the factual findings supporting district court action in response to a motion to suppress in the light most favorable to the district court findings under a clearly erroneous standard. *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992). However, "the ultimate determination of the reasonableness of [the] seizure and search is a question of law to be reviewed by this court de novo." *Id.; accord United States v. Pena*, 920 F.2d 1509, 1513–14 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991); *United States v. McKinnell*, 888 F.2d 669, 672 (10th Cir.1989).

Defendant asserts that the initial stop of his car was pretextual, that it did not meet

the probable cause standard which defendant claims is required to justify a Fourth Amendment seizure, and that the evidence that weapons were seized from the car during the stop should be suppressed as fruit of the poisonous tree. Defendant argues that the trooper could have determined that the rear license plate was from Oklahoma, a state which does not require a front plate, before stopping defendant's car on the highway. The court below held: "I think the initial stop is a close question but I believe there was a reasonable suspicion based upon the totality of the circumstances to stop the vehicle." II R. at 85.

We divide defendant's assertions into three questions: was the stop pretextual? If not, what is the appropriate standard for determining whether there was sufficient justification for the trooper to make the stop? And, under that standard, was the initial stop justified?

■ First, under the circumstances of this case the stop was not pretextual. "A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." *United States v. Guzman*, 864 F.2d 1512, 1515 (10th Cir.1988). We use "an objective test to determine whether a traffic stop [is] pretextual." *United States v. Corral*, 899 F.2d 991, 994 (10th Cir.1990); *see also Guzman*, 864 F.2d at 1515–18 (explaining and adopting objective test). There is no evidence in the record that the trooper made the stop for any reason other than violation of Utah's license plate rule and a seat belt violation. Absent introduction of any rationale for the stop outside the parameters of the traffic violations, the stop cannot, by definition, be called "pretextual."

■ Second, "reasonable suspicion" of illegal conduct is the proper standard to justify stopping a car for a routine traffic violation. Under Fourth Amendment analysis, a routine traffic stop is a limited seizure. *Guzman*, 864 F.2d at 1519. The police must have reasonable suspicion of a

traffic violation to justify the stop. *See United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *United States v. Walker*, 933 F.2d 812, 815, 817 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). "This approach entails a determination of 'whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Dewitt*, 946 F.2d 1497, 1501 (10th· Cir.1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992); *see also Walker*, 933 F.2d at 815.

■ And third, using the "reasonable suspicion" standard, there was sufficient evidence to support the trooper's assertion of reasonable suspicion of a traffic violation, justifying the initial investigative detention. Although defendant argues that the trooper should have discerned that the license plate was from Oklahoma and used his patrol car radio to verify that a front license plate is not required in Oklahoma, there is no evidence in the record that the trooper could determine the state of origin of the license plate prior to the stop. Under an objective standard, the trooper's suspicion about a traffic violation for lack of a front license plate, combined with his observation that defendant was not wearing a seat belt, provided sufficient context for a valid traffic violation stop.

### III

Defendant argues that, once stopped, the trooper's investigation exceeded the scope of the reason for the initial stop and that circumstances did not justify widening the scope of the investigation. The district court held: "The officer was entitled to ask for the registration and the driver's license, ownership evidence. That made him more suspicious when he got what he got. He was certainly acting reasonably in checking out the VIN number and in checking out with NCIC." II R. at 85.

■ Even after he had ascertained that the license plate on the back of defendant's car was from Oklahoma, the trooper's request for defendant's driver's license and registration for the car was justified by the unusual and provocative way defendant pulled his car to a stop at an angle to the highway. The trooper's suspicions were heightened and his investigation was correspondingly widened during his examination of the documents purporting to show that defendant owned the car.

■ When defendant presented the trooper with the unnotarized bill of sale, handwritten on the back of an envelope, and title to the car in another individual's name, the trooper had a "reasonable and articulable suspicion," *see United States v. Turner*, 928 F.2d 956, 958 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991), based on facts and reasonable inferences from those facts, to support further questioning about drugs, money or weapons in the car. This expansion of questioning sprang directly from the combination of defendant's unusual and provocative manner of bringing his car to a stop beside the highway and his production of the suspicious-looking ownership documents. The trooper did not widen the scope of the questioning until after defendant produced these irregular documents. We hold that the trooper's widening of his investigation was reasonable under these circumstances.

### IV

Defendant asserts that such consent as he may have given to search the car was not freely given, and that if he did consent, the search exceeded the scope of the consent. Because this search of the automobile did not uncover either the handgun or the 30/30 rifle which defendant was accused of possessing in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), we need not, and do not, discuss these issues.

The warrantless inventory search of the car beside the highway revealed the loaded handgun under the driver's seat of the car and the operable 30/30 rifle in the trunk. Defendant asserts that this search did not fall within the boundaries of an impound inventory and was thus constitutionally infirm. We note that this search was conducted after defendant, who was traveling alone, was arrested under a warrant for parole violation and after the trooper had been informed that defendant should be considered dangerous.

■ The question whether or not the trooper conducted a proper inventory search is moot. "[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible." *Ibarra*, 955 F.2d at 1410. Defendant was traveling alone and was placed under arrest under a warrant for parole violation; his car, of necessity, had to be impounded. Even assuming arguendo that the post-arrest search beside the highway was improper and should have been conducted in a different manner, had the search been conducted in the manner defendant suggests is proper, it was inevitable that the weapons would have been discovered and that defendant would have been charged with their possession. Under *Ibarra*, this evidence is admissible.

### V

Defendant argues that any and all statements he made in the patrol car after being read the *Miranda* warning should be suppressed because the government did not carry its burden of proving that the statements were an intervening act of free will. The district court found "no reason to disbelieve the officer" that a proper *Miranda* warning was given prior to any post-arrest incriminating statements. II R. at 86.

Defendant has not identified, nor can we discern from the record, a specific statement that he made either before or after the arrest and *Miranda* warning upon which the government would necessarily rely for its prosecution of this case. Under these circumstances, we find this contention to be without merit.

AFFIRMED.