**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mario Valdez CHRISTIAN,**
**Defendant–Appellant.**

No. 94–4128.

United States Court of Appeals,
Tenth Circuit.

Dec. 21, 1994.

Richard G. MacDougall, Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty., with him on the brief), Salt Lake City, UT, for plaintiff-appellee, U.S. of America.

Reid Tateoka, McKay, Burton & Thurman, Salt Lake City, UT, for defendant-appellant, Mario Valdez Christian.

Before HENRY, Circuit Judge, LOGAN, Senior Circuit Judge, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

This case involves a stop by a Utah highway patrolman, and a subsequent search and seizure of a quantity of narcotics. Defendant Appellant Mario Valdez Christian and his co-defendant, Alphonse Wilson, were indicted for possession of more than 5 kilos of cocaine with intent to distribute. An evidentiary hearing was held by a magistrate on defendant's motion to suppress evidence. A report was issued recommending that the motion be denied, and that recommendation was adopted by the district court. After his motion to suppress was denied, defendant Christian entered a conditional plea of guilty to the charge, and this appeal followed.

The evidence presented on the motion to suppress, as accepted by the district court, was as follows:

Officer Fred S. Swain of the Utah Highway Patrol patrols Interstate 15, and his assignment includes investigation of drunken drivers. His area of patrol is somewhat unique because persons will gamble and drink all night in Las Vegas or Mesquite, Nevada, and then attempt to drive home, getting to the Beaver County area in the morning hours. It is four hours from Las Vegas to Beaver County and two hours from Mesquite. During a two-year period, Officer Swain has made five or six DUI arrests in the morning hours and has stopped several others with alcohol on their breath. There are "20 clues" which officers look for to identify intoxicated drivers, and among these are driving left of center or on lane markers and fluctuating speed.

On the morning of June 11, 1993, Swain was driving south on I–15 toward Cedar City, Utah, where he had an appointment to obtain new tires for his patrol vehicle. Because of this appointment, he did not intend to stop vehicles for traffic violations unless they were flagrant. While on his way south, Swain noticed a tan auto going north on the highway, traveling "considerably slower" than the traffic flow. He clocked the vehicle on radar at 60 mph while the traffic flow at the time was traveling 70 to 75 mph. A vehicle traveling slower than the flow of traffic is one factor which may indicate an alcohol-impaired driver. As the vehicle passed him, he noted that the driver was slumped over the steering wheel and seemed to be staring through the windshield. This is also an indication of an impaired driver. Swain crossed the median to follow the vehicle and, as he approached it, it slowed down to 45 mph, crossed twice over the fog line to the right—which was the lane divider between the right-hand lane and the emergency lane—and then sped up to 60 mph.

Swain then determined to make a stop in order to investigate a possible DUI and to see if the driver was falling asleep at the wheel. Swain testified that in his experience, slower-than-usual speed, fluctuation in speed with a driver slumped over the wheel with a "three mile gaze," drifting over the fog line

* The Honorable Wesley E. Brown, United States District Senior Judge for the District of Kansas, sitting by designation.

indicate a driver falling asleep or one who is otherwise impaired.

The stop and ensuing events were recorded on a video recorder in Swain's vehicle. Swain first noticed two police organization stickers from Missouri on the window of the vehicle, a Chevrolet Caprice Classic with Missouri license plates, which was driven by defendant Christian. Swain explained to Christian that he had been pulled over because his speed fluctuated, and he'd crossed the fog line. The passenger, Alphonse Wilson, immediately lit a cigarette. Defendant Christian gave Swain his Missouri driver's license, but the vehicle registration was in the name of Merrill Handley. Handley was not in the vehicle. Swain noticed a screwdriver on the floor of the vehicle. Tools are often found when a vehicle has hidden compartments, and Swain had detected hidden compartments on prior occasions. Swain asked Christian if he had been consuming alcohol or marijuana, but defendant stated he was driving that way because he had been eating fast food and had gas. Swain was still suspicious that the driver was impaired in some way and returned to his vehicle to run a license, warrant, and "NCIC" (National Crime Information Center) check. While this check was being run, Swain asked defendant to stand in front of the patrol car. Defendant told Swain that he'd been in Las Vegas gambling for a couple of days, that he had traveled from St. Louis to Las Vegas, and that Handley, the registered owner of the vehicle, was his nephew who had loaned the vehicle to him. Defendant also said that the passenger, Wilson, was a friend, but he did not work with him. When Swain talked to Wilson, he gave a conflicting story about ownership of the vehicle, stating that it belonged to Christian's "friend."[1] When asked, Christian stated that there were no firearms, cash, marijuana, or cocaine in the vehicle. Swain asked Christian if he could search the vehicle. Christian said "yes." Swain asked if he could search both Christian and the vehicle, and Christian answered "yes" to both questions. Swain asked Wilson if he could search him and the vehicle. Wilson said the officer could search him, but it was up to Christian to authorize a search of the vehicle.

A backup officer arrived before the search, and Wilson and Christian were asked to stand in front of the vehicle on the edge of the pavement. When the officer opened the trunk, he noticed that the back wall of the trunk seemed closer than normal to the rear bumper. Searching further, he found a hidden compartment in the back seat which contained 8 kilos of cocaine.

The video tape of the stop substantiated the testimony of officer Swain. No threats

---

1. Handley was not Christian's nephew. Christian had never met him and did not know him, and had not been given permission to use the vehicle. Christian believed that Wilson, his passenger, had obtained the vehicle from Handley, but he didn't really know. The identity of Handley was never established. At the hearing held on the motion to suppress, defendant gave this testimony regarding ownership of the vehicle: (Vol. II Record, Transcript pp. 65–68:

Q. ... Mr. Christian, who owned the car?
A. Pink slip in the car said Merrill Handley.
Q. How did you obtain permission to drive the car?
A. From Wilson.
Q. How did Wilson obtain permission?
A. He said he got permission from Handley.
Q. How does he know Handley?
A. I'm not sure.
Q. Was there any question in your mind that you did not have consent to take that car?
A. No, I did not have consent to drive the car
...

 * * * * * *

Q. You did not have consent to drive the car?
A. I had consent to drive the car. Wilson told me to drive it but that's the only person.

 * * * * * *

Q. What did you tell the officer?
A. I told him it was a relative's car.

 * * * * * *

Q. And is Merrill Handley a relative of yours?
A. No, he is not.
Q. Why did you tell him that the car belonged to a relative of yours?
A. Because when we first were stopped it was .. we had got a ticket coming up to Las Vegas and it was just indicated that, if I just told him that he would think the car belonged to somebody. He wouldn't ask a bunch of questions about the car.

 * * * * * *

Q. Was it Mr. Wilson's relative's car?
A. I'm not sure.

were made, and defendant's consent to the search was readily given and entirely voluntary.

 The factual findings of the district court must be upheld unless they are clearly erroneous. The reasonableness of the search under the Fourth Amendment is a question of law, subject to *de novo* review by this court. *U.S. v. Horn,* 970 F.2d 728 (10th Cir.1992).

 The district court found that the initial stop of the vehicle driven by defendant Christian was not made upon a pretext; and that finding, fully supported by the evidence, is not clearly erroneous. It is clear that officer Swain possessed an "objectively reasonable and articulate suspicion" that the vehicle was being driven by someone who might be impaired by alcohol or drugs. See *U.S. v. Soto,* 988 F.2d 1548 (10th Cir.1993). Swain's stop was "... justified at its inception and ... it was reasonably related in scope to the circumstances which justified the interference in the first place." *U.S. v. Dewitt,* 946 F.2d 1497, 1501 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992). See also, *U.S. v. Horn, supra,* 970 F.2d 728.

 Christian contends that the officer unlawfully expanded the detention beyond the scope necessary to investigate whether or not he was an impaired driver. A detention beyond the time required for a routine traffic stop is justified where "specific and articulable facts and rational inferences drawn from those facts" generate a reasonable suspicion of criminal activity. *U.S. v. Werking,* 915 F.2d 1404, 1407 (10th Cir.1990).

 Such facts are present in this case. While officer Swain was investigating the possibility that the driver was impaired by drugs or alcohol, and endeavoring to determine the identity of the owner of the vehicle, additional information came to his attention: the officer believed that Christian's excuse

for erratic driving was "made-up" and not believable; passenger Wilson held a freshly lit cigarette (a technique often used to mask the smell of drugs); a screwdriver was on the floor of the vehicle (an indication of a hidden compartment in the vehicle); a police association sticker in the window (a technique used by drug traffickers to project a favorable image); and conflicting information had been given by Christian and Wilson as to how they came into possession of the vehicle, which was registered in the name of a third person, not then present.[2] At this point in time, Swain believed he was justified in questioning the suspects further about drug trafficking.[3]

Appellant relies upon *U.S. v. Fernandez,* 18 F.3d 874 (10th Cir.1994) to support his claim that the detention was unlawful. The facts surrounding the detention of Christian are clearly distinguishable from those found in *Fernandez,* where the driver produced a valid driver's license and registration, both in his own name, and the driver and his passenger there gave consistent and "very plausible" explanations of their travel. 18 F.3d at 878. The facts in our appeal are very different—officer Swain stopped the vehicle for a possible DUI, the vehicle was not registered to Christian or Wilson, and these two offered conflicting and implausible explanations about their possession of the vehicle and its true owner. These facts clearly support the trial court's ruling that the detention was justified.

 The trial court found that Christian had no standing to contest the search of the vehicle. Christian, who had the burden of proof on this issue, was required to show that he had a sufficient expectation of privacy to raise a right to claim a Fourth Amendment violation. *U.S. v. Arango,* 912 F.2d 441 (10th Cir.1990), *cert. denied* 499 U.S. 924, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991). Mere physical possession of the vehicle is not sufficient to confer standing. At the suppression hearing,

---

**2.** The DUI aspect of the case was not concluded until a backup officer arrived on the scene to conduct breath tests, which proved to be negative.

**3.** Officer Swain testified in this manner:
I asked him where he was coming from, where he was going. At this point I realized I needed

to complete a DUI investigation. But I was sufficiently suspicious that they were trafficking drugs so I for the most part interviewed him, asking him questions that would be pertinent to drug trafficking. (Vol II Record, Transcript p. 25).

Christian testified that he did not have the vehicle with the owner's permission, that he was only driving the car because his co-defendant Wilson asked him to do so, and he did not even know if Wilson knew Mr. Handley, the registered owner of the automobile. There is nothing in this record to show that Christian had possession of the vehicle with the owner's permission.

In addition to the lack of standing, the record establishes that Christian consented to the search, after a lawful stop. The district court found that no threats of force or coercion were made and that the consent was entirely voluntary. These findings are not clearly erroneous.

The record establishes that the initial stop of the vehicle operated by Christian was not pretextual, that the subsequent detention was based on a reasonable suspicion of criminal activity; that Christian lacked standing to assert any Fourth Amendment right in the vehicle; and that, in any event, he voluntarily consented to the search of that vehicle. The denial of the motion to suppress is fully supported by the evidence found in the record, and that denial is AFFIRMED.