FILED
United States Court of Appeals
Tenth Circuit

June 13, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

CODY ALLEN SITLINGTON,

     Defendant-Appellant.

No. 12-6273

(D.C. No. 5:11-CR-00360-HE-1)
(W. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **ANDERSON** and **BALDOCK**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is, therefore,

submitted without oral argument.

Cody Sitlington entered a conditional guilty plea to being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 235 months of

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

imprisonment to be followed by five years of supervised release. He appeals from the district court's denial of his motion to suppress. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

**I**

On the night of October 10, 2011, Officer Dustin Spiwak and Corporal Kimberly Dibble of the Shawnee Police Department were on duty when they heard a be-on-the-lookout call for a dark gray Toyota pickup truck traveling at a high speed. Later, this same truck drove towards them, head on. The officers activated their patrol car's emergency overhead lights, at which point the truck changed lanes, passed the officers, and ultimately stopped. When the officers approached the truck, they came into contact with the driver, Cody Sitlington. Sitlington's speech was slurred and he had trouble comprehending what Corporal Dibble was asking him. When asked if he had consumed alcohol, Sitlington said he had not, but admitted he had taken Xanax earlier that night. The officers placed Sitlington under arrest for driving under the influence of narcotics.

After placing Sitlington under arrest, the officers impounded the truck as Sitlington could not drive it and it needed to be removed from the roadway. As is the Department's routine procedure after a vehicle is impounded, the officers conducted an inventory search. Officer Spiwak began to inventory the truck from the front to the back of the truck, and he filled out a Shawnee Police Department inventory form regarding the contents of the truck. In the cab of the truck, Officer Spiwak found packages of controlled dangerous substances, a rifle case, and spotlights. In the bed of the truck,

-2-

Officer Spiwak found a locked toolbox. The key to the toolbox was located on the key ring of the ignition, and Officer Spiwak used the key to unlock the toolbox. Inside the toolbox, he found a Sig Sauer rifle, which he immediately seized.

Officer Spiwak did not write down every single item that he found in the truck. The inventory form that Officer Spiwak filled out listed the following items:

> 2 spotlights
> Rifle Scope SIN STM432G
> Stanley Tool Kit 201 pc
> 2 Gun cases
> misc household items
> knife (SOG)
> misc chemicals & beakers from tool box

Aplt. App. at 152.

It was Officer Spiwak's failure to take a more detailed tally of the truck's contents that gave rise to Sitlington's challenge of the search. Sitlington filed a motion to suppress with the district court, arguing that the inventory search violated his Fourth Amendment rights because the officers did not follow the Department's standardized procedures when they conducted the inventory search of his truck. Id. at 21. At the suppression hearing, Officer Spiwak explained that the category of "miscellaneous household items" included matchbooks, miscellaneous tools, bolt cutters, and a four-way lug wrench. Id. at 73. He also explained that the category of "miscellaneous chemicals and beakers" included hydrogen peroxide, organic solvents, rubbing alcohol, plastic tubing, glass beakers, and glass test tubes. Id. Officer Spiwak could not recall whether he found other items, including a brand new tire and wheel that Sitlington claimed were in the truck. Id. at 89-

-3-

90.

The district court denied Sitlington's motion to suppress, finding that the inventory search did not violate Sitlington's Fourth Amendment rights:

> [T]he inventory process that was conducted here, it seems to me, was far from ideal. I would not expect an inventory process to . . . minutely describe every conceivable thing that you would find in somebody's toolbox or trunk or glove compartment. . . .
> But it does, it seems to me, require a sufficient level of detail to be reasonably related to the purposes that were indicated, and enough to suggest that the whole process just wasn't some kind of a sham to justify rummaging through the stuff. Here, I think the question is close because there were items in the toolbox . . . that I would have thought would have been listed on an inventory. . . .
> . . . .
> But the ultimate question, it seems to me, is whether or not there was a sufficient effort to accomplish an actual inventory such that the process wasn't essentially a sham. And it seems to me that on the showing here I'm persuaded that there was still essentially an inventory process that was conducted here, and that the circumstances don't show this to have been simply a sham. The inventory listing did include in it a number of items that would appear to be the most valuable
> . . . .
> So for those reasons, it does seem to me that the search was of such a nature that it would comply with the Fourth Amendment exception relating to inventory searches, and the defendant's motion to suppress will, therefore, be overruled.

Id. at 133-35.

## II

Sitlington appeals from the district court's denial of his motion to suppress. He argues that the inventory search violated the Fourth Amendment because the police

officers failed to provide a more detailed inventory of the contents of the truck pursuant

to Shawnee Police Department policy. We review a district court's denial of a motion to

suppress de novo. United States v. Benoit, 713 F.3d 1, 8 (10th Cir. 2013). "We accept

the district court's factual findings unless they are clearly erroneous and view the

evidence in the light most favorable to the government." Id.

An inventory search is "a well-defined exception to the warrant requirement,"

Illinois v. Lafayette, 462 U.S. 640, 643 (1983) (citing South Dakota v. Opperman, 428

U.S. 364 (1976)), that "serve[s] to protect an owner's property while it is in the custody

of the police, to insure against claims of lost, stolen, or vandalized property, and to guard

the police from danger." Colorado v. Bertine, 479 U.S. 367, 372 (1987). An inventory

search is "reasonable only if conducted according to standardized procedures," and it

"must not be a ruse for a general rummaging in order to discover incriminating evidence."

United States v. Haro-Salcedo, 107 F.3d 769, 772-73 (10th Cir. 1997). See also Bertine,

479 U.S. at 376; Florida v. Wells, 495 U.S. 1, 4 (1990).

Sitlington does not contend that the impoundment of his truck violated the Fourth

Amendment. However, Sitlington argues that the inventory search violated his Fourth

Amendment rights because the search was not conducted in accordance with Shawnee

Police Department policy. The impound and inventory policy of the Shawnee Police

Department states:

> A record shall be maintained of all vehicles impounded at the
> direction of an officer and the contents of each impounded
> vehicle shall be completely inventoried prior to the removal

-5-

of the vehicle from the scene to the place of impoundment. The inventory shall include all items of value and other tangible personal property . . . . The inventory shall include all areas of or in the vehicle that are capable of being opened, locked or unlocked containers or compartments when on a lawful impound with minimum force, absent of exigent circumstances. In the event that exigent circumstances exist, officers may use whatever force is necessary to enter a locked, sealed or otherwise secured compartment, container or any other area in or of the vehicle. The inventory shall be recorded on the impoundment sheet.

Aplt. App. at 154 (emphasis added). According to Sitlington, Officer Spiwak's "general notations" on the inventory form were incomplete and inaccurate, which did not fulfill the purposes of an inventory search. Instead, Sitlington argues, the search amounted to a pretextual investigatory search. Sitlington contends that the items listed on the inventory sheet were generally items that could be deemed suspicious, and once Officer Spiwak found the rifle bag and rifle scope in the cab of the truck, Officer Spiwak searched the rest of the truck until he found the rifle. Aplt. Br. at 29-30.

This court has not addressed the question of whether a police officer's catalog of an inventory search that lacks sufficient detail is violative of the Fourth Amendment. Other circuit courts that have addressed this issue are in disagreement. Compare United States v. Kindle, 293 F. App'x 497, 500 (9th Cir. 2008) ("[U]nder the totality of the circumstances . . . an incomplete inventory list does not establish that the inventory was subterfuge for an unconstitutional investigatory search."), and United States v. Lopez, 547 F.3d 364, 371 (2d Cir. 2008) ("The concept of an inventory does not demand the separate itemization of every single object."), with United States v. Rowland, 341 F.3d

-6-

774, 780-82 (8th Cir. 2003) (holding that an inventory search was invalid when law enforcement failed to follow standardized procedures and searched the vehicle for only incriminating evidence).

Without reaching the question of whether the officers' inventory search of Sitlington's truck was constitutionally sound, we conclude that the rifle would have been inevitably discovered in a properly-conducted inventory search. Although the government did not raise the inevitable discovery doctrine in district court but instead raised it on appeal for the first time, "[w]e are free to affirm the district court's decision on any ground supported by the record."[1] United States v. Hauk, 412 F.3d 1179, 1185 (10th Cir. 2005); see also United States v. Damato, 672 F.3d 832, 844-45 (10th Cir. 2012). The inevitable discovery doctrine establishes that when "the evidence in question would inevitably have been discovered without reference to the police error or

---

[1] Sitlington argues that because the government did not raise the inevitable discovery doctrine in district court, the government has waived its argument based on the inevitable discovery doctrine on appeal. Aplt. Reply Br. at 18-19. In determining whether to consider an alternative theory on appeal, we are guided by the following factors: "'[1] whether the ground was fully briefed and argued here and below; [2] whether the parties have had a fair opportunity to develop the factual record; and [3] whether, in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law.'" United States v. Damato, 672 F.3d 832, 844 (10th Cir. 2012) (alterations in original) (quoting Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir. 2004)). All three factors weigh in favor of considering the inevitable discovery doctrine. First, although the inevitable discovery doctrine was not raised in district court, both parties argued the inevitable discovery doctrine before this court. Second, both parties were afforded a fair opportunity to develop the factual record. And third, our decision would involve only questions of law because the ultimate determination of Fourth Amendment reasonableness is a legal question that we review de novo. United States v. Forbes, 528 F.3d 1273, 1277 (10th Cir. 2008)

misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." Nix v. Williams, 467 U.S. 431, 448 (1984).

We have repeatedly applied the inevitable discovery doctrine to cases involving, as here, an improper inventory search that was preceded by a lawful impoundment. See, e.g., Haro-Salcedo, 107 F.3d at 773-74; United States v. Horn, 970 F.2d 728, 732 (10th Cir. 1992); but see United States v. Ibarra, 955 F.2d 1405, 1410 (10th Cir. 1992) (declining to apply the inevitable discovery doctrine where an inventory search was preceded by an unlawful impoundment). In applying the inevitable discovery doctrine to cases involving improper inventory searches, we have held that "'[e]ven assuming arguendo that the post-arrest search . . . was improper and should have been conducted in a different manner, had the search been conducted in the manner defendant suggests is proper, it was inevitable that the weapons would have been discovered.'" Haro-Salcedo, 107 F.3d at 774 (alteration in original) (quoting Horn, 970 F.2d at 732).

Here, police officers lawfully impounded Sitlington's truck after his arrest in accordance with Shawnee Police Department policy. See Aplt. App. at 153 ("When the operator of a motor vehicle is taken into custody . . . [t]he vehicle will be impounded."). Sitlington does not dispute that a properly-conducted inventory search would have uncovered the firearm in the truck. The material facts of this case are indistinguishable from Haro-Salcedo, in which the defendant argued that "the officers' deviation from standard departmental procedures revealed the impermissible purpose of the [inventory] search." 107 F.3d at 774. In Haro-Salcedo, we applied the inevitable discovery doctrine

and affirmed the denial of the defendant's motion to suppress.  <u>Id.</u>  We conclude that the same reasoning applies in this case, and we conclude that the rifle would have been inevitably discovered.

## III

Accordingly, we affirm.

Entered for the Court

Mary Beck Briscoe
Circuit Judge