**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 13, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSHUA JOHN KILLBLANE,

    Defendant - Appellant.

No. 16-7023
(D.C. No. 6:15-CR-00065-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **MATHESON,** and **BACHARACH**, Circuit Judges.
_____

Joshua Killblane appeals the district's court denial of his motion to suppress.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

On May 21, 2015, Sergeant William Peters and Officer Dustin Wisdom of the

Muskogee Police Department ("Police Department") pulled over Mr. Killblane because

his truck's tag light (i.e., the light illuminating the license plate) was out.  Mr. Killblane

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

did not have a driver's license on him and the officers discovered his license was suspended, so they placed him under arrest and escorted him to a backup patrol car that later transported him to booking.

A Police Department policy authorized the officers to impound Mr. Killblane's truck because he was not "legally capable of driving the vehicle." ROA at 33. A separate policy directed the officers to inventory "all personal property found" in the impounded truck. *Id.* at 35. After securing Mr. Killblane in the backup patrol car, the officers conducted a search of his truck. Sergeant Peters opened the passenger door and discovered a firearm case and multiple firearms in the back seat. He left the firearms in the truck, contacted dispatch to run Mr. Killblane's criminal history, and then instructed Officer Wisdom to look inside the truck. Officer Wisdom also found the firearms in the back seat and the two officers removed the guns and placed them on the hood of the patrol car. Sergeant Peters testified that information about the firearms was recorded in a separate log but was not included in the inventory paperwork listing other items removed from the truck.

Officer Wisdom returned to the truck to complete the inventory search. He found a flashlight, a backpack with some contents in it, an oil filter, a wrench set, a car seat, a tire, a folding chair, and some debris. He took no notes during his search and then returned to the patrol car to fill out the inventory paperwork. In the inventory paperwork, he listed only a "wrench set" and a "car seat." *Id.* at 49. At the suppression hearing, Officer Wisdom testified that he inadvertently left some items off the inventory list, and filled out the inventory from memory. He typically did not list items worth less than $25,

even though the Police Department's policy required officers to list "all personal property found in any vehicle compartment." *Id.* at 50; *see also id.* at 35.

On September 10, 2015, a grand jury indicted Mr. Killblane for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Mr. Killblane moved to suppress the evidence of the seized firearms during the May 21, 2015 inventory search, arguing the officers conducted an illegal warrantless search that violated his Fourth Amendment rights. A magistrate judge held an evidentiary hearing and issued a report and recommendation to deny the motion to suppress. Mr. Killblane objected. The district court overruled the objection and denied the motion. Mr. Killblane entered a conditional plea of guilty and appealed the district court's denial of the motion to suppress.

## II.  **DISCUSSION**

### A.  *Standard of Review*

We review a district court's denial of a motion to suppress de novo. *United States v. Benoit,* 713 F.3d 1, 8 (10th Cir. 2013). "We accept the district court's factual findings unless they are clearly erroneous and view the evidence in the light most favorable to the government." *Id.*

### B.  *Legal Background*

### 1.  **Fourth Amendment Overview**

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, law enforcement officers

- 3 -

must obtain a warrant supported by probable cause before conducting a search or seizure. *Id.*; *Kentucky v. King*, 563 U.S. 452, 459 (2011).

## 2. **Inventory Search Exception**

"An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment." *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997). The search is "an administrative procedure designed to produce an inventory" of an arrestee's personal belongings. *Id.* at 773. It has three purposes: "protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger." *Id.* at 772. An inventory search must be reasonable, which means it must be "conducted according to standardized procedures" and "must not be a ruse for a general rummaging in order to discover incriminating evidence." *Id.* at 772-73.

## 3. **Inevitable Discovery and the Inventory Search Exception**

"When a search violates the Fourth Amendment, the exclusionary rule normally dictates that evidence obtained as a result of that search be suppressed. The inevitable discovery doctrine provides an exception to the exclusionary rule, and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (citations and quotation omitted).

"We have repeatedly applied the inevitable discovery doctrine to cases involving, as here, an improper inventory search that was preceded by a lawful impoundment."

*United States v. Sitlington*, 527 F. App'x 788, 792 (10th Cir. 2013) (unpublished)[1] (citing *Haro-Salcedo*, 107 F.3d at 773-74; *United States v. Horn*, 970 F.2d 728, 732 (10th Cir. 1992)). "To prove the seized evidence would have been inevitably discovered, the government can rely on a hypothetical inventory search, but only if such a search would not have transgressed its administrative purposes." *United States v. Martinez*, 512 F.3d 1268, 1274 (10th Cir. 2008).

In *Horn*, officers stopped a car and arrested the driver based on an arrest warrant for a parole violation. 970 F.2d at 729, 732. An officer conducted an inventory search of the car and discovered firearms under the driver's seat and in the trunk. *Id.* at 730. The defendant argued the officer conducted an improper inventory search, but we concluded that question was "moot" because the car would have been impounded and searched in any event. *Id.* at 732. We stated, "Even assuming arguendo that the post-arrest search beside the highway was improper and should have been conducted in a different manner, had the search been conducted in the manner defendant suggests is proper, it was inevitable that the weapons would have been discovered and that defendant would have been charged with their possession." *Id.* (citing *United States v. Ibarra*, 955 F.2d 1405, 1410 (10th Cir. 1992) ("[I]f evidence seized unlawfully would have been inevitably discovered in a subsequent inventory search, such evidence would be admissible.")).

---

[1] We find the reasoning of this unpublished opinion, though not precedential, to be instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

In *Haro-Salcedo*, a federal agent working with local state police searched a lawfully impounded car "because he believed the car may have contained contraband." 107 F.3d at 770. The agent discovered cocaine in the trunk of the car. *Id.* The defendant moved to suppress. *Id.* He "[did] not dispute that a proper inventory search would have uncovered the cocaine in the trunk of his vehicle," but argued instead "that the officers' deviation from standard departmental procedures revealed the impermissible purpose of the [inventory] search." *Id.* at 774. Relying on *Horn*, we rejected that argument. *Id.* We concluded that although the federal agent did not perform a proper inventory search under the department procedures, "suppression of the cocaine is not appropriate in this instance where the contraband would nonetheless have been discovered" during a proper inventory search. *Id.* at 773.

In *Sitlington*, officers conducted an inventory search of a lawfully impounded truck but failed to make a detailed list of the personal items they found. 527 F. App'x at 790. They discovered controlled substances and firearms. *Id.* at 789-90. The defendant moved to suppress, arguing the inventory search was incomplete and inaccurate and therefore violated the Fourth Amendment. *Id.* at 791-92. Relying on *Horn* and *Haro-Salcedo*, we declined to reach that argument because "the rifle would have been inevitably discovered in a properly-conducted inventory search." *Id.* at 792.

## C. *Analysis*

Mr. Killblane does not argue the traffic stop, arrest, or impoundment was unlawful. Nor does he dispute the district court's conclusion that the firearms would have been inevitably discovered in a properly conducted inventory search. In *Sitlington*,

*Haro-Salcedo*, and *Horn*, we concluded the seized evidence was admissible because law enforcement would have inevitably discovered it even in the absence of a proper initial inventory search. *Sitlington*, 527 F. App'x at 793; *Haro-Salcedo*, 107 F.3d at 774; *Horn*, 970 F.2d at 732. We therefore conclude the firearms in Mr. Killblane's lawfully impounded truck would have been inevitably discovered and the district court did not err.

Mr. Killblane's arguments to the contrary are unpersuasive. First, he contends *Martinez* and *Haro-Salcedo* do not apply because officers "suspected criminal activity" when undertaking the searches in those cases. Aplt. Br. at 13. But that difference is not dispositive. Both cases held that law enforcement would have inevitably discovered the seized evidence during a proper inventory search of a lawfully impounded vehicle. *Martinez*, 512 F.3d at 1274; *Haro-Salcedo*, 107 F.3d at 773-74. We likewise conclude—and Mr. Killblane does not dispute—that officers would have inevitably discovered the firearms during a proper inventory search of Mr. Killblane's lawfully impounded truck.

Second, he attempts to distinguish this case from *United States v. Tueller*, 349 F.3d 1239 (10th Cir. 2003). We decline to address the argument because our holding does not rest on *Tueller*.

Third, he states, "[A] hypothetical constitutional inventory search cannot provide the basis for inevitable discovery when the officer[s] failed to follow standard procedures during their inventory of the vehicle." Aplt. Br. at 15. Instead, he argues there must be "the possibility of a subsequent independent legally valid search" apart from the improper inventory search for the inevitable discovery rule to apply. *Id.* The cases applying the rule to inventory searches do not pose such a requirement, however. We have repeatedly

held that the Government can rely on a hypothetical, proper inventory search to prove seized evidence would have been inevitably discovered. *Sitlington*, 527 F. App'x at 792-93 (stating the evidence "*would have* been discovered" through a "properly-conducted inventory search" (emphasis added)); *Martinez*, 512 F.3d at 1274 ("To prove the seized evidence would have been inevitably discovered, the government can rely on a hypothetical inventory search, but only if such a search would not have transgressed its administrative purposes."); *Haro-Salcedo*, 107 F.3d at 773-74 (concluding evidence "*would have*" been discovered through proper inventory search (emphasis added)); *Horn*, 970 F.2d at 732 (stating "question whether or not the trooper conducted a proper inventory search [was] moot" because "it was inevitable that the weapons *would have* been discovered" (emphasis added)).

Fourth, he argues the officers were not acting in good faith when they conducted the inventory search. This argument speaks to the validity of the inventory search. As we have stated, we hold that a proper inventory search would have uncovered the firearms even if the officers had conducted an improper inventory search.

## III. **CONCLUSION**

We affirm.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge