**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1892
_____

UNITED STATES OF AMERICA

v.

LOREN B. CLARK, JR.,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 3:24-po-00002-001)
District Judge:  Honorable Karoline Mehalchick
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 20, 2025
_____

Before:  PHIPPS, CHUNG, and ROTH, <u>Circuit Judges</u>

(Filed: July 18, 2025)
_____

OPINION[*]
_____

CHUNG, <u>Circuit Judge</u>.

Following a traffic stop in the Delaware Water Gap National Recreation Area,

_____

[*]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

park rangers discovered marijuana and cocaine in appellant Loren Clark's vehicle. Clark moved to suppress the evidence seized from his van, arguing that the rangers impermissibly extended the traffic stop without reasonable suspicion of other wrongdoing in violation of <u>Rodriguez v. United States</u>, 575 U.S. 348 (2015). The District Court denied his motion after an evidentiary hearing. Clark pleaded guilty and now appeals.

For the reasons set forth below, we will affirm.

I.      <u>BACKGROUND</u>[1]

In May 2023, park rangers James Papai and Ryan Maloney were on duty in the Delaware Water Gap National Recreation Area. After Ranger Papai observed a white van cross the center line on the roadway, the rangers began to follow the van. Dispatch advised the rangers that the van's registration was valid and current, and that the vehicle had not been reported as stolen.

When the rangers initiated a traffic stop, the van pulled to the right side of the road, crossed the fog line, and began to stop. Before the rangers were able to exit their vehicle, and as the van was still "creeping" forward, Clark opened the driver's side door of the van. App. at 21. In response, Ranger Papai opened his door and commanded Clark to stay in his vehicle. Clark closed the door, but almost immediately reopened it and got out. The van eventually came to a complete stop. Clark then walked toward the rangers, turned toward the van, and put his hand in his pocket. Ranger Papai drew his firearm, directed Clark to show his hands, and ordered him back into the vehicle. Clark

---

[1]     Because we write for the parties, we recite only the facts pertinent to our decision.

complied. As the rangers approached the vehicle, Ranger Papai observed "a lot of [frenetic] movement in the driver's compartment." App. at 21. Once at the van, they asked for and were provided Clark's license. After the rangers obtained his license, Clark lit a cigarillo.

Rangers Papai and Maloney returned to their vehicle to run Clark's driver's license, which came back clear. The two rangers then discussed Clark's behavior. The rangers "did not catch any odor of alcohol," did not "hear any slurring in his speech," and did not see Clark "brace himself on the side of the van." App. at 24. Clark's "eyes look[ed] fine" and "his speech [wa]sn't slurred." DX1.4 at 2:36-3:00. Nonetheless, the rangers suspected that Clark was either driving under the influence or was hiding contraband. The two agreed that Clark's behavior was "definitely odd enough to continue the investigation." DX 1.4 at 4:15-23.

Following the rangers' discussion, Ranger Papai asked Clark to get out of his vehicle and walk to the back of the van for a sobriety check. Clark complied and the rangers proceeded to question Clark for approximately two minutes about whether he was driving under the influence and if he was concealing contraband.

Ranger Maloney then asked a series of questions about Clark's drinking and asked about his prior drug use. The rangers then asked if there was anything illegal in the car and Clark responded that there was not. Nonetheless, the rangers sought and received consent to search Clark's passenger compartment. After Ranger Papai found marijuana, he searched the back of Clark's van where he located almost 15 grams of crack cocaine.

3

Approximately eight minutes elapsed between the initiation of the traffic stop and Clark's consent to search his van.

Following the search, the rangers arrested Clark, who was charged with a traffic violation, possession of marijuana, and possession of crack cocaine. Clark filed a motion to suppress the drugs found in his van, arguing that the traffic stop was unlawfully extended in violation of Rodriguez, 575 U.S. 348. After an evidentiary hearing, the District Court denied Clark's motion to suppress. It held that the rangers did not deviate from the mission of the traffic stop at any point and that there was therefore no "Rodriguez moment." App. at 75-76. It also held that any investigation unrelated to the traffic stop was supported by reasonable suspicion that Clark was engaged in criminal activity.

Clark pled guilty to the traffic violation and possession of crack cocaine pursuant to a plea agreement which preserved Clark's right to appeal the denial of his suppression motion. On April 25, 2024, the District Court sentenced Clark to pay a $5,000 fine. Clark timely appealed.

II.    DISCUSSION[2]

Clark argues that the rangers unlawfully extended his traffic stop without

---

[2]    The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291. When reviewing an order denying a motion to suppress evidence, we review a district court's factual findings for clear error and review its legal determinations de novo. United States v. Stewart, 92 F.4th 461, 466 (3d Cir. 2024). Because the District Court denied the motion to suppress, we view the facts in the light most favorable to the government. Id.

4

reasonable suspicion that he was involved in other criminal activity, as required by Rodriguez, 575 U.S. at 354-55.  We disagree with Clark and conclude that, even if the rangers extended the traffic stop, the extension was supported by reasonable suspicion that Clark was in possession of contraband.[3]

A traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete [the] mission" of the stop.  Illinois v. Caballes, 543 U.S. 405, 407 (2005); Rodriguez, 575 U.S. at 354.  The "mission" of a traffic stop is "to address the traffic violation that warranted the stop and attend to related safety concerns."  Rodriguez, 575 U.S. at 354 (internal quotation marks and citations omitted).  Once the law enforcement officer addresses these matters, the seizure must end unless the officer has reasonable suspicion of additional illegal activity.  United States v. Hurtt, 31 F.4th 152, 159 (3d Cir. 2022).

Our inquiry therefore "proceeds in two steps."  Stewart, 92 F.4th at 467.  "First, we determine the moment when the stop was measurably extended, which we have called the 'Rodriguez moment.'"  Id. (quoting United States v. Green, 897 F.3d 173, 179 (3d Cir. 2018)).  "Second, we determine whether the facts available to the officer up to that moment established reasonable suspicion of criminal activity."  Id.

---

[3]     The District Court found that there was reasonable suspicion that Clark had committed a different crime, driving while under the influence.  We need not address whether and when there was reasonable suspicion for that crime as we affirm for other reasons.  United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005) ("We may affirm on any ground supported by the record.").

Clark appears to identify two possible "Rodriguez moments" when the rangers strayed from their original mission of investigating a traffic violation: (1) after the rangers asked Clark out of his vehicle and had the opportunity to observe his walking and talk to him; and (2) when the rangers began asking Clark "about his historical drug use, whether he was transporting contraband, and for consent to search the passenger compartment of his van." Opening Br. at 17. We need not decide if either of these instances amounted to a "Rodriguez moment" because there was reasonable suspicion of criminal activity—specifically, that Clark was in possession of contraband—throughout the eight-minute stop.

Reasonable suspicion is measured objectively. United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006). To satisfy this standard, a law enforcement officer needs only "some minimal level of objective justification[.]" United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). When making "reasonable-suspicion determinations, we … must look at the totality of the circumstances … to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). "We afford significant deference to a law enforcement officer's determination of reasonable suspicion" given their "experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Foster, 891 F.3d 93, 104 (3d Cir. 2018) (internal quotation marks omitted).

6

Considering all circumstances at the time of either <u>Rodriguez</u> moment identified by Clark, there was reasonable suspicion that Clark was in possession of contraband. By the time the rangers asked Clark to exit his vehicle for questioning, the rangers had observed Clark: (1) open his door as the van was still moving; (2) emerge from his vehicle while it was still moving; (3) walk toward the rangers' vehicle, turn his body away, and quickly put his hand in his pocket; (4) move frenetically once back inside his van; and (5) light a cigarillo once he re-entered his van. Of particular importance is that Clark emerged from his vehicle before being prompted and lit a cigarillo after he was ordered back in the vehicle. In Ranger Maloney's experience, to which we give significant deference, people "that jump out of the vehicle right away are trying to distance themselves from something from that vehicle," often because they are "nervous about something that's in the vehicle." App. at 36. Moreover, lighting a cigarillo, while often benign, also supports a reasonable suspicion that the individual was attempting to mask the scent of drugs or can reasonably be interpreted as evincing nervousness. As Ranger Maloney testified, a "freshly lit…cigarette" is often an indication that a person is "trying to cover some type of odor." App. at 37; <u>see also</u> <u>Stewart</u>, 92 F.4th at 471; <u>United States v. Christian</u>, 43 F.3d 527, 530 (10th Cir. 1994); <u>United States v. Neumann</u>, 183 F.3d 753, 756 (8th Cir. 1999); <u>United States v. Moore</u>, 795 F.3d 1224, 1230 (3d Cir. 2015).[4] The other circumstances identified above further support a reasonable suspicion

---

[4] We do not rely on Ranger Maloney's testimony to establish his subjective view of whether Clark lit his cigarillo to hide the odor of contraband. Rather, his testimony

that Clark had contraband in his vehicle.  This reasonable suspicion was present from the beginning of the stop to the end, including when the rangers began questioning him about his previous drug use.[5]

III.    CONCLUSION

For the reasons set forth above, we will affirm.

---

establishes lighting a cigarillo supports an objectively reasonable suspicion that Clark was hiding contraband.

[5]    Clark disputes that his answers to roadside questioning support a finding of reasonable suspicion.  We perceive no clear error in the District Court's conclusion that Clark's answers to simple questions were at times evasive or non-sensical.  While our reasonable suspicion determination does not rely upon Clark's answers, we note that the District Court's finding supports a conclusion that there was reasonable suspicion that Clark possessed contraband.  See Stewart, 92 F.4th at 468 (noting that "evasive, inconsistent, and downright puzzling answers" may contribute to reasonable suspicion).